## ALLEN *v.* GILLETTE.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF TEXAS.

No. 277. Argued and Submitted May 3, 1888. — Decided May 14, 1888.

The principle that a trustee may purchase the trust property at a judicial sale, brought about by a third party, which he had no part in procuring, and over which he could not have had control, is upheld by numerous decisions of this court, and of other courts of this country, and prevails in Texas.

IN EQUITY. Decree dismissing the bill. Complainant appealed. The case is stated in the bill.

*Mr. J. T. Brady* for appellant. *Mr. H. F. Ring* was with him on the brief.

*Mr. T. N. Waul* for appellee submitted on his brief.

MR. JUSTICE LAMAR delivered the opinion of the court.

This is a suit in equity in the Circuit Court of the United States for the Eastern District of Texas. The bill sets forth that complainant, Fannie B. Allen, a citizen of Kentucky, is the granddaughter of James Morgan, who died in 1866 seized and possessed of an estate of 70,000 acres of land, and a homestead in Galveston, with some personal property. The land was unproductive and scattered throughout the State. The deceased devised his property to seven grandchildren, of whom complainant was the oldest, and who in 1866 married at the age of seventeen years.

By the terms of the will Henry F. Gillette, George Ball, both of Texas, and W. H. N. Smith, of North Carolina, were appointed executors. They were authorized, after probating said will and filing inventory and appraisement of the property, to administer the estate without any accountability to any judge or court. Gillette and Ball on being duly qualified entered upon the management of the estate.

On the 13th day of June, 1872, complainant and her husband, H. A. Allen, gave their note for $1200, payable six months from date, with 12 per cent interest, to the Banking and Insurance Company of Galveston, to secure the payment of which note they also executed a deed of trust on all complainant's interest in the various tracts of land described in said deed belonging to the estate. Complainant and her husband being unable to pay said note when it became due, the deed of trust was foreclosed, her interest in said estate was sold thereunder, and the said defendant, Gillette, became the purchaser of said interest at the foreclosure sale.

The complainant alleges, at length, that, being poor and in

needy circumstances, arising from the failure and refusal of said defendant to settle up the said estate so as to let her have her portion thereof, or to render it available to relieve her pressing necessities, she was induced by the advice of said defendant to borrow said money from the bank and to execute the said note and deed of trust, which she would not have done but for defendant's promise to make her said interest in the estate available, so as to pay off said note, and thus prevent the sale under the deed of trust. She further alleges that, by withholding from her information as to the condition and value of the estate and making no reports to the court, the defendant obtained an undue advantage over her, and was thereby enabled to bid in her interest for much less than it was worth at the time of the sale. After alleging other circumstances of wrongful conduct and dereliction of duty, she states that, owing to enforced absence from Texas, to her poverty, and to the ignorance in which she was kept as to the real facts relative to her father's estate, it was not until a few months before this suit was commenced that she, by accident, discovered that she had any lawful claim to recover of said defendant her interest in the lands purchased by him.

The bill closes with the prayer that she be allowed to redeem said land from the said defendant, Gillette, by paying said purchase money, and that, in the event of her being unable to redeem it within such reasonable time as the court might direct, then that the land be resold for her benefit, paying the defendant the amount of his advances and interest; that the said defendant be required to answer, under oath, each and every allegation of the bill, and to make a full account of all his actings and doings as executor of Morgan's estate.

The defendant denies the allegation that the note and mortgage were executed by said complainant at his (defendant's) suggestion, by his advice, or with his approval, and alleges, in specific detail, that each and all the statements in the bill as to his (defendant's) conversations, actions, or privity with said complainant and her husband, or said company, in any manner leading to or connected with said loan, note, and trust deed, are wholly untrue and unfounded; and avers that he

was entirely ignorant of the borrowing of the said money and of the execution of said note and deed of trust, and of any and all negotiations with reference thereto, or of any purpose of the kind on their part, until long afterwards, when he happened to see in a newspaper an advertisement of the sale to be made under the trust deed by complainant and her husband. The answer proceeds to give a full recital of the circumstances of defendant's purchase of said interest, declaring that having failed in his efforts to prevent said sale or to secure any better price to be aid, and that having ascertained that the property would be inevitably sold, he attended and purchased said interest, bidding the amount of said debts and expenses of the sale, and that said husband of complainant was present at the sale, repeating his assurance, previously given, of satisfaction at the purchase of defendant in his own personal right and for his own benefit, and without trust or liability to complainant. Defendant further alleges that the price was entirely adequate to the value of the interest at that time, and denies the allegations of complainant to the contrary; alleges that said lands were appraised at twenty-five cents per acre; that the indebtedness of the estate exceeded $20,000; that if settlement had been forced it would not have yielded sufficient to pay the indebtedness; and that the policy of paying off the debts gradually, by inducing creditors to accept lands in settlement and selling in small parcels on time, thus saving all the lands they possibly could for division among the grandchildren of Morgan, was known to, and approved by, the relations and friends of the other six minor children. He denies all concealment of the condition and indebtedness of the estate from complainant and her husband, who was a young man of good business qualifications, fully able, so far as defendant knows and believes, to maintain his family in comfort by economy and industry; and in specific detail shows how he (the defendant) acted in good faith, with all reasonable diligence, in the discharge of his trust to the creditors and devisees of the estate.

The case was set for hearing upon bill and answer, and the exhibits to the bill and answer respectively. Upon the trial, the court held that the complainant was not entitled to the

relief prayed for in the bill; that no fraud was shown to have been committed, and that the defendant acted in the purchase with good faith; and rendered a decree against complainant, dismissing her bill with costs.

The complainant in this case prayed that the defendant be required to answer upon oath, fully and distinctly, each allegation of the bill. He did answer, and repelled every allegation of suggestion or knowledge on the subject of complainant's transactions with the bank, or of any approval of them after he was informed of them. His answer is corroborated by the circumstances and facts developed. There is not in those circumstances the slightest trace of fraud, false representation, or unfair dealing on his part in making the purchase, or of inadequacy of the price paid. It is, perhaps, worthy of remark, that counsel for complainant, both in oral argument and printed brief, was particular to call especial attention of the court to the fact that it is not alleged "that the defendant was guilty of fraud of any kind, either express, implied, or constructive;" nor is it claimed that the facts alleged in the bill show fraud of any kind on the part of the defendant. The theory of his case is, that, on account of the fiduciary relation of the defendant, the law conclusively presumes that he made the purchase for the benefit of the complainant as the *cestui que trust;* and that he thereby acquired only the right of holding the property as a trust mortgagee, and was entitled to realize what he had paid for it in the same manner as a mortgagee realizes from his investment. This is the whole extent of the claim; — not that the purchase shall be set aside and declared void for fraud of any kind, either express or implied, but that it should be upheld and made to operate as a resulting trust for the benefit of the complainant.

It must be conceded that, as a general rule of equity jurisprudence, a trustee or person acting in a fiduciary character for the benefit of others cannot become a purchaser at his own sale, or acquire any interest therein without the express consent, or under a special permission given by a court of competent jurisdiction. The cases cited by counsel for appellant abundantly support this doctrine. It applies to executors

and administrators who are not permitted to derive a personal benefit from the manner in which they transact the business or manage the assets of the estates intrusted to them ; but whatever advantage is derived by them from a purchase at an undervalue is for the common benefit of the estate.

In this case the precise nature of the trust, as well as the character and limits of the relations of the executor to the estate, are fixed with precision by the terms of the will, which is as follows :

" I do hereby constitute and declare the children of Son Kosinsko Morgan and his wife Caroline, to wit, Fannie Belle, Charles W., P. May, Maria Orphelia, and Nellie Latham, and Ellen Lee, the daughter of my daughter Othelia Lee, my residuary legatees, and to them in equal shares I will, devise, and bequeath all my estate and property, both real and personal, wherever the same may be, after all just debts against my estate and expenses accruing in the settlement thereof shall have been paid and discharged.

" I hereby constitute and appoint George Ball, of Galveston County, and H. F. Gillette, of Harris, both of the State of Texas, and Mr. Wm. H. N. Smith, of Murfreesborough, North Carolina, the executors of this my last will and testament (and to qualify without bond), with power, jointly or either two of them, to do all such acts and things, to sell any property necessary for the liquidation of debts, and to take all such steps and measures as may be necessary or expedient in the discharge or execution of the trust hereby reposed in them, and in payment and discharge of all the provisions and bequests herein contained, and in the administration of the estate and property devised and disposed of by virtue of this testament ; and finally, it is my special desire that when this my last will and testament shall have been proven and recorded and an inventory and appraisement of my estate recorded in the probate court, neither such court nor any other shall have anything further to do with the administration of my estate, but my said executors, George Ball, H. F. Gillette, and W. H. N. Smith, or any two of them who shall qualify and act, shall have full control of my estate under the will,

without accountability to any judge or court further than before expressed by the will."

It is clear, that, with the exception of the exemption of the executors from accountability to the court in the details of administration, the trust created by this will is the same that attaches by operation of law to any executor, to wit, a trust to pay the debts of the estate and then to deliver over the remainder of the lands for partition among the devisees or heirs.

The subject matter of the trust in this case is the whole estate in its entirety : (1) for the common benefit of all the creditors ; and (2) for the common benefit of all the heirs or devisees. Respecting these creditors or devisees in their separate and individual capacity, he is not the representative or guardian of their person or property, and can exercise no legal control over either. The disposition which a single creditor may make of his debt against the estate, or the sale or other disposition which an individual devisee may make of his individual interest in said estate, cannot interfere with the executor's control of the estate for the payment of the debts of the creditors, on the one hand, or for its ultimate partition among the devisees, on the other ; and both are, therefore, matters entirely outside of his trust and his office.

We have already taken it as true that fraud is out of the question in this case, and that the defendant had no agency in the borrowing of the money and incumbering her separate interest as above described by the complainant. She had, in conjunction with her husband, absolute authority to contract that debt, and to convey her interest in the lands of the estate in trust to the bank, with a power, in case of default of payment, to sell said property. Having this right free from any power of interference on the part of the executor, Gillette, it must follow that the debt was a legal one, the incumbrance a valid one, and the sale under it by the trustee in the deed equally valid and legal. Up to this point the defendant occupies no relation of trust or confidence to the transaction. With no legal power over any of the contracting parties, with no right to interfere with the trustee, to whom full power by

the deed is lawfully given to sell the incumbered interest at public auction, he has no trusteeship in regard to it, no duty to perform in respect to it. The debt itself, incurred by complainant, constitutes no part of the liabilities of the estate which he, as executor, represents. The sale, when made, touched that estate nowhere, did not diminish its assets in the least, nor withdraw from it any lands subject to the debts of creditors, and to the ultimate partition of the devisees and their assigns.

There is nothing in the transaction, from its inception to its final consummation, that imposed upon the defendant any duty incompatible with his right as a purchaser at the sale.

The principle that a trustee may purchase the trust property at a judicial sale brought about by a third party, which he had taken no part in procuring, and over which he could not have had control, is upheld by numerous decisions of this court and of other courts of this country. *Prevost* v. *Gratz*, 1 Pet. C. C. 364, 378; *Twin Lick Oil Co.* v. *Marbury*, 91 U. S. 587; *Chorpening's Appeal*, 32 Penn. St. 315; *Fisk* v. *Sarber*, 6 W. & S. 18.

It is true that the rule upon this subject as stated by some text writers is more stringent than that stated in these cases. 1 Perry on Trusts, § 205; Hill on Trustees, 250. We think, however, that the language employed by them does not present a thorough and perfect generalization of the essential principles pervading the decisions upon this subject. They are in manifest conflict with the uniform current of decisions of the Supreme Court of Texas, which are our guides in this case. *Erskine* v. *De la Baum,* 3 Texas, 406, 417; *Howard* v. *Davis*, 6 Texas, 174; *Scott* v. *Mann*, 33 Texas, 725; *Goodgame* v. *Rushing*, 35 Texas, 722.

From all of which we are of the opinion that the decree of the court below was correct, and it is accordingly

*Affirmed.*