BUFFALO COUNTY NATIONAL BANK, APPELLEE, V. FOUNTAIN M. SHARPE ET AL., APPELLANTS.

FILED APRIL 17, 1894.   No. 5575.

1. **Corporations**: OFFICERS: NOTICE. "A corporation is not chargeable with the knowledge nor bound by the acts of one of its officers in a matter in which he acts in behalf of his own interests, and deals with the corporation as a private individual, and in no way represents it in the transaction." (*Koehler v. Dodge*, 31 Neb., 329.)

2. **Chattel Mortgages**: REGISTRATION: PLACE OF SALE. Mortgaged chattels may be sold under the mortgage in a county other than the one in which they were at the time of the execution of the mortgage, and were afterwards kept up to the time of seizure under same, when the mortgage by its terms provides that the sale may take place in such other county, if the mortgagee, prior to the sale, files or causes the mortgage to be filed in the county where the sale is made.

3. ———: UNLAWFUL SALE OF CHATTELS: DAMAGES. If chattels seized by virtue of a mortgage are sold in a manner other than is provided by law, without the consent of the mortgagor, said mortgagor will be entitled to any damages caused by such illegal sale.

4. **Mortgage by Wife to Secure Husband's Debt**: CONSIDERATION. Where a married woman gives a mortgage on real estate, which is her individual property, to secure a note executed by her husband, the consideration of such note and mortgage being the extension of time of payment of the debt evidenced by such note, the consideration will be held sufficient and the wife bound, to the extent of the property mortgaged, for the payment of the debt.

5. **Review**: EVIDENCE. The findings and decree of the lower
court *held* to be in accordance with the testimony and sustained
by the weight thereof.

APPEAL from the district court of Custer county. Heard
below before HOLCOMB, J.

*Henry M. Kidder,* for appellants:

The burden of proof was on the bank, when the question of usury was raised by the answer, to show that it was a *bona fide* purchaser for value without notice. (*Darst v. Backus,* 18 Neb., 231.)

*R. A. Moore, contra:*

The wife has a right to mortgage her property, if she so desires, and the consideration moving to the husband is sufficient to sustain the mortgage, when it is entered into voluntarily on her part. (*Mundy v. Whittemore,* 15 Neb., 652; *Webb v. Hoselton,* 4 Neb., 308; *Gillespie v. Smith,* 20 Neb., 456; *Savings Bank v. Scott,* 10 Neb., 83; *Barnum v. Young,* 10 Neb., 309; *Hale v. Christy,* 8 Neb., 268; *Eckman v. Scott,* 34 Neb., 817.)

HARRISON, J.

On the 24th day of November, 1891, the Buffalo County National Bank commenced an action in the district court of Custer county to foreclose a mortgage on lot number two, in block number seven, in Mason City, Nebraska, executed and delivered by Tonnie A. Sharpe and Fountain M. Sharpe November 20, 1889, to one A. J. Gallentine to secure the payment of a note in the sum of $1,052.91, of date November 20, 1889, signed by Fountain M. Sharpe and payable to A. J. Gallentine, and by him sold for a valuable consideration and before maturity to the plaintiff. The Sharpes were husband and wife, and the real estate described in the mortgage upon which the suit was

brought was in the wife's name, and from all that appears in this case belonged to her. The note of $1,052.91 was given by the husband to Gallentine in settlement of some prior claim or indebtedness of the husband to Gallentine, and apparently to settle and stop further proceedings in a lawsuit then in progress or pending in court, and the consideration, if any, for the execution of the mortgage by the wife, Tonnie A. Sharpe, was whatever extension of time was granted to her husband on his indebtedness to Gallentine and the settlement of the then pending case or lawsuit.

It is alleged in the petition, and appears in the case, that when the note and mortgage above described were executed and delivered to Gallentine he received from Fountain M. Sharpe a chattel mortgage on a number of horses and that this mortgage also became the property of the plaintiff bank. It further appears that there were also indorsed and delivered to the bank, by Sharpe, a note and mortgage executed by one W. C. Blaine in favor of F. M. Sharpe, said note being in the sum of $287 and secured by mortgage on four head of horses.

The defendants answered separately, the answer of the wife being, in substance, that she never received any consideration or benefit for or from the execution of the mortgage. There was a further allegation in her answer that she was induced to execute the mortgage by fraud and misrepresentation, but this portion of her defense was afterward abandoned. Fountain M. Sharpe states in his answer, in substance, that the note in suit was given in renewal of two notes which evidenced a prior indebtedness of defendant F. M. Sharpe to Gallentine for money loaned by Gallentine to defendant, and that the note sued upon in this action was in part for usurious interest on the loans, the principal and interest of which, added together, constituted the amount of the note secured by the mortgage declared upon in this case; that Gallentine was a director of

the plaintiff bank at the time of the sale of the note in suit to it, and that the bank was not an innocent purchaser, as it was charged with such knowledge or notice as was possessed by its director, of any defense in favor of defendant to the note; that defendant sold to plaintiff one horse at the agreed price of $100 and was to be credited with such sum as a payment on the note; that the plaintiff forcibly took possession of the property covered by the two chattel mortgages and removed it from Custer county, Nebraska, to Buffalo county, Nebraska, and there sold it and converted it to its own use; that the property included in the Blaine mortgage was reasonably worth $350, and that the property covered by the other chattel mortgage was worth the sum of $2,975, and for these several sums defendant demanded a set-off.

To these answers plaintiff filed a reply which contained a general denial of each answer and a further statement that all the matters set up in the answer of defendant F. M. Sharpe had been litigated in an action in the county court of Custer county, Nebraska, wherein this plaintiff was plaintiff and F. M. Sharpe defendant, and fully adjudicated and determined in favor of plaintiff.

The first question argued by counsel in their briefs is, was the knowledge of the director of the bank, at the time he sold the note to them, that the defendant had a defense to the note, notice to the bank of the infirmity of the note and the defense thereto? It was not pleaded, and there was no proof, that the bank had any other or further notice than the knowledge possessed by its director Gallentine, who, in the negotiations for the sale of the note to the plaintiff, acted for himself and as a stranger to the bank, and not in his capacity as director of the bank; nor is it contended that there was any collusion between the parties to the sale of the note. Clearly the knowledge possessed by Gallentine was not the knowledge of or notice to the the bank of any defense claimed by the defendant

against the note. This is the rule of law governing such cases, established by this court in *Koehler v. Dodge*, 31 Neb., 329, where it was held: " A corporation is not chargeable with the knowledge nor bound by the acts of one of its officers in a matter in which he acts in behalf of his own interests, and deals with the corporation as a private individual, and in no way represents it in the transaction;" and the following cases were cited by NORVAL, J., in support of the doctrine announced: *Barnes v. Trenton Gas Light Co.*, 27 N. J. Eq., 33; *First Nat. Bank v. Christopher*, 40 N. J. Law, 435; *Custer v. Tompkins County Bank*, 9 Pa. St., 27; *Winchester v. Baltimore & S. R. Co.*, 4 Md., 231; *United States Ins. Co. v. Shriver*, 3 Md. Ch., 381; *Wickersham v. Chicago Zinc Co.*, 18 Kan., 481; *La Farge Fire Ins. Co. v. Bell*, 22 Barb. [N. Y.], 54; *Washington Bank v. Lewis*, 22 Pick. [Mass.], 24; Angell & Ames, Corp., secs. 308, 309. (See also *Merchants Nat. Bank of Kansas City v. Lovitt*, 21 S. W. Rep. [Mo.], 825; *Commercial Bank of Danville v. Burgwyn*, 14 S. E. Rep. [N. Car.], 623.) This also disposes of the defense of usury. The plaintiff having been determined to be an innocent purchaser and holder of the note, the above defense fails and cannot be further considered.

The next inquiry which presents itself is, did the wife subject her separate property to the payment of her husband's note or debt, or render it liable therefor by the execution and delivery of the mortgage upon it, to secure such note or debt? The note signed by the husband and the mortgage given by the husband and wife were both executed on the same day and, so far as the evidence discloses, at the same place; but however this last fact may have been, there was a sufficient consideration for the execution of the note by the husband, viz., the extension of the time for the payment of his debt. The wife executed and acknowledged as her voluntary deed and act, and delivered to Gallentine, the mortgage on her separate property to secure the

payment of the note which evidenced the debt of the husband, and the consideration being its extension of payment. This was a contract which she had the power to make and by which she bound her property for the payment of the amount of the note. (*Nelson v. Bevins*, 19 Neb., 715; *Hale v. Christy*, 8 Neb., 265; *Stevenson v. Craig*, 12 Neb., 464; 1 Jones, Mortgages, sec. 113.)

The only other question for our consideration is the one in reference to the foreclosure of the chattel mortgages and the amount with which the defendants should be credited as the proceeds of the property included in such mortgages. It is conceded by plaintiff that the four horses covered by what is designated as the Blaine mortgage (or, as shown by the evidence, two mares and two colts) were taken from Custer county to Buffalo county and there kept for several months, for the reason, as claimed by plaintiff, that they were in very poor condition and could not be sold. The bank does not claim that these horses were sold under the mortgage in the manner provided by law for conducting such sales, but that it disposed of them to the best advantage possible for all parties concerned, at private sale, and was liable for any damages suffered by defendants by reason of the irregular sale of these four horses. The property taken by virtue of the mortgage from Sharpe to Gallentine was sold in Kearney after notice by advertisement as required by law. This mortgage provided by its terms for the sale of the stock in Kearney, and prior to the sale the mortgage had been duly filed in the office of the clerk of Buffalo county. This mortgage seems to have been foreclosed and sale of the stock had in the place stated in the mortgage, and in a legal manner. After a thorough examination of all the evidence bearing upon the taking of all the stock, and its sale at the prices obtained, and the values of the horses as given in the testimony of the different witnesses, we are satisfied that the judge who tried the case in the lower court gave the proper credit to defend-

ants for the proceeds of the stock taken by plaintiff under the chattel mortgages and sold, and that the finding of the amount of the balance due upon the note was correct when viewed in the light of all the evidence in the case.

The decree of the lower court is affirmed, but the jour. nal entry ordered amended to make it a proper decree of foreclosure of the mortgage, and omitting the portion in which a personal judgment is rendered against the defendants.

JUDGMENT ACCORDINGLY.