## BURNS v. COOPER et al.

## COOPER v. BURNS.

(Circuit Court of Appeals, Eighth Circuit. August 9, 1905.)

Nos. 2,223, 2,226.

1. GUARDIAN—SALE OF WARD'S LAND—SETTING ASIDE PURCHASE BY GUARDIAN.

A sale made by a guardian of the real estate of his wards, in pursuance of lawful authority and in conformity with an order made by the proper probate court having exclusive jurisdiction of the persons of the wards and their estate, is voidable under the laws of the state of Nebraska and the general principles of equity as well, and may be set aside by the wards or any one lawfully claiming under them, if the guardian procures the property to be sold for the purpose of transferring the title thereof to himself, and in the execution of such purpose indirectly becomes the purchaser at his sale.

[Ed. Note.—For cases in point, see vol. 25, Cent. Dig. Guardian and Ward, § 370.]

2. SAME—ESTOPPEL OF WARD.

In such case of actual fraud, the fact that the wards may have received some benefit from the transaction will not estop them or one lawfully claiming under them from avoiding the sale, or from interposing the fraudulent character of the sale in defense of the rights of such wards, or any one claiming under them, in the property.

3. MORTGAGE—FORECLOSURE—DEFENSES—LACHES.

One who holds the legal title to real property is not guilty of laches which will prevent him from asserting the invalidity of a mortgage thereon, in defense of a suit to foreclose the same, merely because he has not instituted a suit to avoid the mortgage. It is time enough for him to present his objection to the mortgage when it is attempted to be asserted against his legal title.

4. SAME—BONA FIDE PURCHASER—NOTICE.

The holder of a promissory note secured by mortgage on the real estate of the wards so sold and purchased by the guardian, executed by the guardian after his purchase, is chargeable with notice of what is shown by the public records affecting the title and security afforded by his mortgage; and this, notwithstanding such owner is a bona fide holder for value. And if the public records disclose either the fraudulent character of the guardian's deed found in the chain of title, or a state of facts from which he should have known of its fraudulent character, he cannot rely on the strength of such title as a foundation for his mortgage security.

5. HUSBAND AND WIFE—CONTRACTS OF MARRIED WOMAN.

The common-law rule of disability of a married woman to contract in relation to her real estate is not entirely abrogated, but is in force in the state of Nebraska, except as modified by the Public Acts of that state in relation to real estate and in relation to married women, and, as construed by the entire course of judicial decisions of the Supreme Court of that state, only authorize a married woman to contract with reference to and upon the faith and credit of her separate property.

6. SAME—AFTER-ACQUIRED PROPERTY.

Prior to the date of the mortgage sought to be foreclosed in this suit, as the statute law of Nebraska was construed by the Supreme Court of that state, the common-law rule as to the legal disability of married women to bind themselves by their contracts or covenants in relation to real estate was not so far abrogated as to permit a married woman to bind her after-acquired property by her covenants in a joint mortgage made by her husband and herself, for his benefit, covering property in which she held and claimed to hold but a life estate; and this, for the reason that such indebtedness was not created and mortgage made in

140 F.—18

relation to and upon the faith and credit of her separate property, except to the extent of her life estate therein, and such mortgage binds her separate property to the extent of such life estate, and no further.

7. SAME—ESTOPPEL.

As the covenants of a married woman in such joint mortgage do not operate to bind her personally, or her separate estate, they do not operate to estop her from claiming an interest in the property described in the mortgage, lawfully acquired by her after the date of the mortgage freed from its lien.

(Syllabus by the Court.)

Appeals from the Circuit Court of the United States for the District of Nebraska.

For opinion below, see 133 Fed. 398.

This controversy involves the consideration and determination of an appeal and cross-appeal, based upon the same record and arising from the following state of facts:

Prior to the 5th day of July, 1877, one Daniel Foley was the owner of 150 acres of land in Platte county, Neb., occupied by himself, his wife, Mary Foley, and their minor children, Jeremiah and Mary E. Foley, as a homestead. On that day Daniel Foley died intestate, the property descending under the laws of the state of Nebraska to the children, share and share alike, subject, however, to the right of homestead and the vested right of dower in the widow; these rights of homestead and dower, in practical effect, amounting to a life estate in Mary Foley. Thereafter, at some time not shown by the record, in the year 1883, the widow, Mary Foley, intermarried with one Martin Burns. On the 23d day of August, 1883, Martin Burns was, by the probate court of Platte county, Neb., duly appointed guardian of the persons and estate of the minor children, Jeremiah and Mary E. Foley, and on the 20th day of February, 1884, in due form of law, applied to the probate court for a license to sell the interest of his wards in the real estate, which license was granted, and in pursuance thereof the interest of the minors in the land was advertised and sold to one James Cooney for the sum of $1,100. This sale was reported to the court, and by the court examined and confirmed, on the 20th day of June, 1884; and on the 23d day of June thereafter the guardian, Martin Burns, executed and delivered a guardian's deed to said Cooney. And on the same day, and as a part of the same transaction, Cooney reconveyed the property to the guardian, Martin Burns. These conveyances were on the same day filed for record and recorded in the proper public office in Platte county, Neb. At the time of this sale the minors were aged, respectively, seven and eight years. The guardian, Martin Burns, filed no account with his wards in the probate court until March 14, 1892, in which account, when filed, he charged himself with the sum of $1,100, as purchase money of the land received from James Cooney, June 12, 1884, and interest thereon at the legal rate; crediting himself with the sum of $265.65 paid in satisfaction of a mortgage on the land at the time it was sold, $150 court costs and attorney's fees, $75 doctor bill paid for his ward Mary E. Foley, and $1,250 for keeping, clothing, care, and maintenance of his wards. The purchase of the property by Cooney at the guardian's sale was made at the instigation of the guardian, Martin Burns. Nothing was paid thereon by Cooney. After the intermarriage of Martin Burns and Mary Foley, they, together with the minor children, continued to occupy the premises in question as a home.

On the 4th day of March, 1889, Martin Burns borrowed of the Globe Investment Company (hereinafter called the "Investment Company") the sum of $1,800, evidenced by the promissory note of himself and wife, and to secure payment of the same he, together with his wife, made, executed, and delivered to the Investment Company a mortgage, with full covenants of seisin, warranty, and against incumbrance. On the same day he also, with his wife, made, executed, and delivered to the Investment Company their promissory note in the sum of $180 and a second or commission mortgage to secure payment of the same. At the time of the making of these mortgages the Investment Company examined the records in the office of the county clerk of

Platte county, Neb., the appropriate public office for the filing and recording of instruments and conveyances affecting the title to real estate in said county, and had both actual and constructive notice of all the public records contain. The money represented by the promissory note for $1,800 and the mortgage securing the same was paid to and received by Martin Burns for his own use. On June 9, 1892, one J. Lowell Moore, trustee, the then holder of the commission note and mortgage, brought suit in the district court of Platte county, Neb., and obtained a decree foreclosing the same, subject, however, to the lien of the $1,800 first mortgage. After advertisement of the property for sale by the sheriff in execution of this decree, the minors, Jeremiah and Mary E. Foley, by their next friend, brought suit in the district court of Platte county, Neb., to restrain the sale by the sheriff of their interest in the land, and to cancel and set aside the guardian's deed to James Cooney, the deed from Cooney to their guardian, Martin Burns, and the two mortgages executed by Martin Burns and wife to the Investment Company, alleging as grounds therefor the fraud of their guardian in the sale of their property. To this suit, Moore, as trustee, and the Investment Company, answered, setting forth fully and relying upon the strength of the title obtained by Cooney as purchaser at the guardian's sale, the reconveyance to Martin Burns, and the mortgages based thereon. A trial was had, resulting in a decree enjoining a sale of their interest in the property by the sheriff, canceling the guardian's deed to Cooney and the reconveyance by Cooney to their guardian; also canceling the mortgages executed by Martin Burns and wife to the Investment Company, in so far as they purported to be a lien upon the estate of the minors in the property. This decree stands unreversed and unmodified. Thereafter, the life estate of Mary Burns in the land was sold under the decree foreclosing the second or commission mortgage, subject, however, to the lien of the first mortgage thereon and the rights of the minors in the property. At this sale the life estate, subject to the first mortgage, was purchased by attorneys representing Moore, trustee, who thereafter quitclaimed their interest to appellee, C. C. Muller. May 5, 1896, the daughter, Mary E. Foley, then unmarried and of age, conveyed her interest in the land to one Jeremiah Grady, who thereafter, on March 27, 1897, conveyed this interest to Jeremiah Foley. October 24, 1899, Jeremiah Foley died, single and intestate, leaving as his heirs his mother, Mary Burns, and his sister, Mary E. Foley. November 2, 1900, Mary Burns conveyed all her interest in the property to her daughter, Mary E. Foley. October 27, 1902, Mary E. Dill, then married, formerly Mary E. Foley, executed and delivered to appellee Blake Maher a conveyance of all her interest in the property. This conveyance, while absolute in form, is shown by a joint declaration of trust executed by said Maher, and Mary Burns and her husband, Martin Burns, to have been in trust for the benefit of Mary Burns, charged, however, with the payment to Maher of the sum of $1,900, purchase money paid by him to Mary E. Dill. The promissory note for $1,800 and mortgage given to secure the same by Martin Burns and wife were, in March, 1889, for value received, indorsed and transferred to one Percival Bonney. No record of this transfer was made on the public records of Platte county, Neb. This note and mortgage were held by Bonney until the year 1894, when he exchanged the same for debenture bonds, series R, executed and issued by the Investment Company. And said note and mortgage were pledged with one John Herbert, trustee, as collateral security for the benefit of the holders of this series of debenture bonds. In the year 1895 the Investment Company failed. A receiver was appointed and took charge of its assets.

This present suit was brought in the Circuit Court of the United States for the District of Nebraska, in 1903, by Chas. E. Cooper, successor in trust of John E. Herbert, trustee, for the benefit of the holders of debenture bonds, series R, issued by the Investment Company, to obtain an accounting of the amount due on the promissory note of $1,800, and upon tax certificates held by complainant for taxes accruing on the land for the years 1888 to 1897, both inclusive, and to obtain a decree foreclosing the mortgage on the entire estate, and a sale of the estate in satisfaction of the amount found due. All parties necessary to a complete and final decree were brought before the court. Upon issues joined the case was submitted on evidence and agreed

facts, of which the foregoing are, in substance, those deemed material to a decision of the controversy. The trial resulted in a decree stating the amount due complainant on the note and tax certificates held by him, and also the amount due Blake Maher for purchase money paid to Mary E. Dill for the benefit of Mary Burns. And the liens were adjusted, as follows: Complainant was awarded a first lien for the amount of the note and taxes on the life estate of Mary Burns acquired by her on the death of her husband, Daniel Foley; also, a first lien upon the undivided one-half of the remainder acquired by her by reason of the death of her son, Jeremiah Foley; and a second lien upon the remaining undivided half interest subject to a lien in favor of Blake Maher for the purchase money by him paid to Mary E. Dill. From this decree, defendant below, Mary Burns, in case No. 2,223, appeals, challenging by her assignments of error the correctness of the decree in awarding complainant a lien beyond the life estate held by her in the property at the date of the making of the mortgage. Complainant below, Chas. E. Cooper, trustee, files a cross-appeal and cross-assignments of error in case No. 2,226, attacking the decree entered in not awarding him a first lien on the entire estate for the amount of his note, and also for the amount found due on the tax certificates held by him. The decree stands unchallenged by appellee Blake Maher.

John J. Sullivan and A. M. Post, for Mary Burns.

C. C. Flansburg (R. O. Williams, on the brief), for Charles E. Cooper, trustee.

Before VAN DEVANTER, Circuit Judge, and CARLAND and POLLOCK, District Judges.

POLLOCK, District Judge, after stating the case as above, delivered the opinion of the court.

The lien for taxes paid did not rest for its support on the validity of the mortgage held by complainant. Neither was it necessarily coextensive with the lien of the mortgage, if valid; but it was an underlying lien resting upon the entire estate, and in this respect the decree is now conceded to be erroneous. Again, it is conceded by all the lien of the mortgage binds the life estate of Mary Burns. The first contested proposition naturally arising for decision in this case is the effect to be given, under the circumstances of this case, to the sale made by the guardian of the estate of his wards, and the guardian's deed based thereon; for, if this sale be declared valid, it then follows, of necessity, the lien of the mortgage sought to be foreclosed attached to the entire estate and is a valid lien thereon, inferior only to that of complainant for taxes paid, unless a consideration of this question is foreclosed and set at rest by the decree entered in the state court at the suit of the minor children.

The contention of cross-appellant, Cooper, trustee, on this branch of the case is twofold: (1) That under the laws of the state of Nebraska the proceedings by a guardian to sell the real estate of his wards is a proceeding in rem, and the decree of a court having jurisdiction binds all parties in interest and the property, and is conclusive; (2) that appellant, Mary Burns, is barred by the statute of limitations of the state of Nebraska from interposing the defense of the invalidity of the guardian's proceedings and deed as a defense to this suit, for that more than five years had elapsed from the date the minors attained their majority before such defense was sought to be interposed in this

suit. As has been seen from the facts stated, while the proceedings instituted and carried through by the guardian for the sale of his wards' interest in the land are regular in form, and were conducted in the court having exclusive, original jurisdiction of such matters, yet in truth, as shown by the record, such proceedings were utterly wanting in good faith and were simulated by the guardian only for the purpose of transferring the estate of his confiding wards of tender years to his own use. In fact, the pretended sale was one in form only, made by a trustee at his own sale to himself, in fraud of the rights of his cestuis que trustent. There is no principle better settled, or with better reason, than the one that courts of conscience have and will continue to condemn and avoid such sales when timely challenged at the suit of one thus defrauded, or their successor in interest, and will refuse to uphold or enforce transactions of this character, unless the rights of innocent third parties have intervened, or some positive enactment of statutory law withdrawing that protection afforded may be interposed. Michoud et al. v. Girod et al., 4 How. 503, 11 L. Ed. 1076; Drury v. Cross, 7 Wall. 299, 19 L. Ed. 40; Marsh v. Whitmore, 21 Wall. 178, 22 L. Ed. 482; Jackson v. Ludeling, 21 Wall. 516, 22 L. Ed. 492; Twin-Lick Oil Co. v. Marbury, 91 U. S. 587, 23 L. Ed. 328; Wardell v. Railroad Co., 103 U. S. 651, 26 L. Ed. 509; Thomas v. Brownville R. R. Co., 109 U. S. 522, 3 Sup. Ct. 315, 27 L. Ed. 1018; Allen v. Gillette, 127 U. S. 589, 8 Sup. Ct. 1331, 32 L. Ed. 271; La Dow v. North American Trust Co., (C. C.) 113 Fed. 13.

In Michoud et al. v. Girod et al., supra, Mr. Justice Wayne, delivering the opinion of the court, said:

"We concur with the learned judge in the Circuit Court in setting aside the purchases by which Nicolas Girod and Jean Francois Girod became the possessors of their testator's entire estate. But the morality and policy of the law, as it is administered in courts of equity, induce us to add that those purchases were fraudulent and void, and may be declared to be so, without any further inquiry, upon the ground that they were made by the intervention of persons who were nominal buyers of the property for the purpose of conveying it to the executors. Such a transaction carries fraud upon the face of it. Lord Hardwicke v. Vernon, 4 Ves. 211; 14 Ves. 504; 2 Bro. Ch. 410, note. It matters not, in such a case, whether the sales are made with or without the sanction of judicial authority, or with ministerial exactness. The rule of equity is, in every code of jurisprudence with which we are acquainted, that a purchase by a trustee or agent of the particular property of which he has the sale, or in which he represents another, whether he has an interest in it or not—'per interpositam personam'—carries fraud on the face of it."

Nor is it deemed material the minors may have obtained some benefit from the transaction. Rowe v. Griffith, 57 Neb. 488, 78 N. W. 20; Bachelor v. Korb, 58 Neb. 122, 78 N. W. 485, 76 Am. St. Rep. 70; Wilkinson and another v. Filby, 24 Wis. 441; Requa v. Holmes, 26 N. Y. 338. In cases of actual fraud, as here, no inquiry of benefits accruing to the beneficiary of the trust will be indulged. Section 85, c. 23, of the Compiled Statutes of Nebraska, prohibits the purchase by executors, administrators, or guardians at sales made by them in their representative capacity, as follows:

"The executor or administrator making the sale, and the guardian of any minor heir of the deceased shall not directly or indirectly purchase, or be

interested in the purchase of any part of the real estate so sold; and all sales made contrary to the provisions of this section shall be void; but this section shall not prohibit any such purchase by a guardian for the benefit of his ward."

This statute has been construed by the Supreme Court of the state of Nebraska, and the word "void" employed therein has been held to mean, voidable at the suit of any proper party in interest. Veeder v. McKinley-Lanning Loan & Trust Co., 61 Neb. 892; 86 N. W. 982. In view of this statutory provision, as construed by the highest judicial tribunal of the state, and upon general principles of right and justice as well, we have no hesitation in declaring the proceedings of the guardian in this case with relation to the trust estate of his wards, and his deed as guardian based on such proceedings, fraudulent in fact and voidable. Do the public records of the county afford evidence sufficient to charge one dealing with the property in question with notice of the fraudulent character of the guardian's deed, and the consequent invalidity of subsequent conveyances and incumbrances based thereon, and was the cross-complainant, Cooper, trustee, chargeable with notice of what the public records of Platte county contain? As has been seen, the deed of Martin Burns, as guardian, to Cooney, and the deed of the latter to Martin Burns, were executed on the same day, filed for record at the same time, and express an identical consideration. These facts are shown by the public records of the county. The construction and effect to be given the recording acts of the state of Nebraska is a question of local law, governed by the decisions of the Supreme Court of that state, and controlling here.

In Bachelor v. Korb, supra, that court, in dealing with a transaction similar in character to the one in question, said:

"An intending purchaser of this real estate, looking at the record of its title, would have seen in this transaction of a sale by the guardian to Kriz and a deed to him for $2,700, and three days afterwards a deed from Kriz for $2,700 to the guardian's wife, sufficient to have aroused the inquiries and suspicions of any prudent man, and these inquiries, if pursued with any diligence whatever, would have probably revealed the fact that Kriz never paid anything for this real estate; that the entire proceeding instituted and carried on by this guardian was for the purpose of depriving his wards of the title to their property and vesting it in his wife."

The case of Veeder v. McKinley-Lanning Loan & Trust Co., supra, was a case wherein an administrator indirectly purchased at his own sale, under circumstances very similar to those in the case at bar. It is there held:

"A subsequent purchaser or mortgagee of real estate sold by an administrator is chargeable with notice of what is contained in the public records, evidencing the chain of title through which the party claims, and with all information imparted thereby; and where such records make it apparent that an administrator, in violation of law, was indirectly the purchaser of the property at such sale, and to whom the property was immediately transferred, or where the facts are sufficient to put an ordinarily prudent man on inquiry, such subsequent purchaser or mortgagee is not a good-faith grantee for value, and without notice of the infirmity in the title held by his grantor."

This also appears to be the rule in other jurisdictions. Obert v. Obert, 10 N. J. Eq. 98; Smith v. Drake, 23 N. J. Eq. 303; Fisher et

al. v. Bush, 133 Ind. 315, 32 N. E. 924; McKay v. Williams, 67 Mich. 547, 35 N. W. 159, 11 Am. St. Rep. 597.

Applying this rule, it must be held, any one dealing in relation to the title of the real estate in controversy, or the security afforded by that title, were chargeable with notice of what the public records of the county disclosed with reference to that title, and in this case sufficient facts were of record to impart notice of the invalidity of the title of the guardian, Martin Burns, and all subsequent conveyances or incumbrances resting thereon alone for their support.

A statute of Nebraska (section 2578, Comp. St. 1901) provides, in substance, no action can be maintained by a ward, or any one claiming under him, to recover land sold by his guardian unless the action be commenced within five years next after the termination of the guardianship; and as more than five years had elapsed after the minors attained their majority and the guardianship was terminated before the mother, Mary Burns, claiming to hold under them, sought in this foreclosure suit to interpose the fraudulent character of the guardian's sale and the consequent invalidity of the mortgage lien resting thereon, it is contended by cross-appellant that the statute cuts off and bars this defense. It is not necessary to consider what under other circumstances would be the effect of the statute. This is a suit in equity, in which cross-appellant is asserting a purely equitable right and is seeking purely equitable relief, and the question whether or not the defense of the invalidity of the mortgage is barred, if it could ever be so considered, is not to be resolved strictly according to the inflexible rule of the statute of limitations, but according to the doctrine of laches applied in courts of equity. Stevens v. Grand Central Mining Co., 67 C. C. A. 284, 133 Fed. 28, 31; Farmers' Loan & Trust Co. v. Denver, etc., Railroad Co., 60 C. C. A. 588, 126 Fed. 46. In the circumstances of this case neither Mary Burns nor the wards under whom she claims are fairly chargeable with laches. The title or estate conveyed by the guardian's sale was recovered by the wards in an appropriate suit before they attained their majority and before the termination of the guardianship. That title or estate subsequently passed to Mary Burns. The Investment Company, the only record claimant at the time under the mortgage here in controversy, was a party to that suit, and the decree included a cancellation of the mortgage. If it be true that the decree is not conclusive upon cross-appellant, because his predecessor in interest, Percival Bonney, was not a party to the suit, it yet remains that cross-appellant and his predecessor have never held the title or estate wrongfully conveyed by the guardian, but at most a mortgage lien thereon, which could be enforced only by a suit in equity. Non constat that either would ever endeavor to enforce the mortgage. Certainly one who holds the legal title to real property is not guilty of laches which will prevent him from asserting the invalidity of the mortgage thereon in defense of a suit to foreclose the same, merely because he has not instituted a suit to avoid the mortgage. It is time enough for him to present his objections to the mortgage when it is attempted to be asserted against his

legal title.   Farmers' Loan & Trust Co. v. Denver, etc., Railroad Co., supra.

It follows, from what has been said, the mortgage sought to be foreclosed, when made, operated only on the life estate of Mary Burns. It did not bind the estate of the minor children.   They were free to assert its invalidity as against their interests, as is their successor in interest, Mary Burns, by way of defense to this suit, unless, as shall be subsequently seen, she is concluded on other grounds.   This view of the case renders a consideration of the legal effect of the decree obtained in the state court at the suit of the minors unnecessary, and the same has been adverted to in this opinion solely for the purpose of effectively disclosing lack of acquiescence on their part in the fraud practiced upon them by their guardian and for the further purpose of disposing of the question of laches.   Since the execution and delivery of the mortgage in suit, as has been seen from the facts stated, appellant, Mary Burns, has lawfully succeeded to the title and estate of her minor children in the land, charged in her hands, however, with the payment of the purchase money paid by Blake Maher, appellee, to her daughter, Mary E. Dill.

The sole question remaining for decision depends upon her power to bind this after-acquired estate, or to estop herself from claiming it by her covenants found in the mortgage executed jointly by her and her husband to the Investment Company.   The solution of this problem depends upon the statute law of the state enacted with reference to the power of married women to convey or incumber their real estate, as construed by the highest judicial tribunal of that state.   This is thought to be the substantial and meritorious question in this controversy, and requires not alone the consideration of the terms of the statutes relating to the power of married women to contract with reference to their real property, in force at the date of the execution of the mortgage, but, as well, a review of the decisions of the Supreme Court of that state construing such enactments; it being obvious to all, such decisions, if any, rendered prior to the date of the mortgage are controlling and decisive here.   As has been seen, the mortgage was jointly executed by Martin Burns and Mary Burns, his wife, for the benefit of the husband.   At this time the legal title to the property appeared of record in the husband, the life estate only in the wife.   The covenanting clause of the mortgage reads as follows:

"And the said parties of the first part do hereby covenant and agree that at the delivery hereof they are the lawful owners of the premises above described, and are seised of a good and indefeasible estate of inheritance therein, free and clear of all incumbrances, and that they will warrant and defend the same in the quiet and peaceable possession of said party of the second part, and its successors and assigns, forever, against the lawful claims of all persons whomsoever."

There are two legislative acts of the state of Nebraska bearing upon the question here involved.   The first was passed in 1866, and now forms chapter 73, Compiled Laws of 1885, and relates to real estate.   The sections of this act material to a consideration of this case

are sections 42, 48, 50, 51, Comp. St. 1885 (sections 47, 53, 55, 51, 56, Rev. St. 1866).

Section 42 reads:

"Any real estate belonging to a married woman, may be managed, controlled, leased, devised or conveyed by her, by deed, or by will, in the same manner and with like effect as if she were single."

· Section 48 reads:

"A married woman shall not be bound by any covenant in a joint deed of herself and husband."

Section 50 reads:

"Every conveyance of real estate shall pass all the interest of the grantor therein, unless a contrary intent can be reasonably inferred from the terms used."

By section 46 of this act the term "deed" is defined to be any instrument in writing by which any real estate or interest therein is created, aliened, mortgaged, or assigned.

Section 51 reads:

"When a deed purports to convey a greater interest than the grantor was at the time possessed of, any after-acquired interest of such grantor to the extent of that which the deed purports to convey, shall accrue to the benefit of the grantee."

The second act was passed in 1871 (Laws 1870-71, p. 68), now forms chapter 53, Compiled Laws of the state, and relates to married women. The first three sections of this act alone are material here.

Section 1 reads:

"The property, real and personal, which any woman in this state may own at the time of her marriage, and the rents, issues, profits, or proceeds thereof, and any real, personal or mixed property, which shall come to her by descent, devise or the gift of any person except her husband, or which she shall acquire by purchase or otherwise, shall remain her sole and separate property, notwithstanding her marriage."

Section 2 reads:

"A married woman, while the marriage relation subsists, may bargain, sell, and convey her real and personal property, and enter into any contract with reference to the same in the same manner, to the same extent, and with like effect as a married man may in relation to his real and personal property."

Section 3 reads:

"A woman may, while married, sue and be sued, in the same manner as if she were unmarried."

The latter act being the latest expression of the legislative will, when in conflict with the former, of course, must control. At the common law a married woman was not sui juris, and could not, for want of power, bind herself by her contracts or covenants. In equity, her separate estate, under certain conditions, might be charged with the payment of her obligations. For the purpose of modifying or entirely abrogating this want of power to contract, the several states have passed what is commonly called the "Married Woman's Act." These several acts are couched in different phraseology, in many cases requiring different constructions. This difference in phraseology, in

some part at least, accounts for the conflict in judicial opinions prevailing in the different states. In other instances, the same enactment has received a different construction by the different courts, no doubt arising from the viewpoint from which the object to be attained by the act was considered. As a result of judicial decisions in some jurisdictions, as Massachusetts, Ohio, South Dakota, Kansas, and others, the settled course of decision has been to entirely remove all disability on the part of married women to bind themselves by their contracts. See Knight v. Thayer, 125 Mass. 25; Lessee of Hill v. West et al., 8 Ohio, 222, 31 Am. Dec. 442; Yerkes v. Hadley (Dak.) 40 N. W. 340, 2 L. R. A. 363; Deering v. Boyle, 8 Kan. 525, 12 Am. Rep. 480; Wicks v. Mitchell, 9 Kan. 80; Knaggs v. Mastin, Id. 532; Miner v. Pearson, 16 Kan. 27. In other jurisdictions the absolute disability of married women to contract at the common law has been kept in mind by the Legislature and the courts, and the effect of legislation in such states, as settled by the decisions, has been to remove in part only the pre-existing disability of married women to bind themselves by their contracts or covenants in conveyances. See Thompson v. Merrill, 58 Iowa, 419, 10 N. W. 796; Fechheimer v. Peirce, 70 Mich. 440, 38 N. W. 325; Wadleigh v. Glines, 6 N. H. 17, 23 Am. Dec. 705; Brawford v. Wolfe, 103 Mo. 391, 15 S. W. 426. This, however, being a question of purely local law, it is as useless as unnecessary to follow the course of judicial decisions in other states, in order, if possible, to formulate therefrom a rational rule of decision here; for in the decisions of the Supreme Court of Nebraska, if that court had expressed itself upon the subject under investigation prior to the date of the mortgage in suit, the rule to be followed here, if possible, must be found, and this, for the reason, if such rule be found, this court is bound thereby and is not entitled to an independent judgment construing the statutes in question. In Kocher v. Cornell, 59 Neb. 315, 80 N. W. 911, decided in 1899, that court passed upon the power of a married woman to bind her after-acquired property by her contract of suretyship, and, in denying the power, held, by the provisions of chapter 53. Comp. Laws, above quoted, her common-law disability was only partially removed, and her power, under the statutes, to bind her separate property by her contract, extended no further than, in equity, she already possessed. In Grand Island Banking Co. v. Wright, 53 Neb. 574, 74 N. W. 82, decided in 1898, that court, in denying the liability of a wife for a deficiency judgment arising on foreclosure of mortgages executed by her husband and herself for the benefit of the husband, in the course of an elaborate and exhaustive opinion reviewing the entire course of judicial decisions to that date, and construing the statutory enactments above quoted with relation to the power of married women to deal with their real estate, Judge Norval, after referring to the statutes of the state, said:

"Thus it will be observed the Legislature has to some extent removed the common-law disability of a married woman. In this state she may acquire and hold property in her own right, and may engage in business on her separate account, and her earnings derived either from such trade or business or from her labor or services she owns in her own right. The implied power of a feme covert to contract is given by the last section quoted; but this only

extends to her separate trade or business and to contracts with reference to her personal services. The express authority conferred upon married women to enter into contracts is to be found in section 2 copied above. But this statute does not expressly, nor by implication, enlarge a wife's capacity to contract generally. She can buy and sell property in her own name and upon her own account, and enter into valid contracts with reference to her separate estate the same as if she were a feme sole, or as a married man may in relation to his property. The statute does not undertake to confer upon a married woman an unrestricted power to make contracts, but such right is limited to contracts made with reference to, and upon the faith and credit of, her separate property or estate. Upon such contract she is liable, but all her other engagements and obligations are void as at common law. To hold unqualifiedly that a married woman has the same right to enter into contracts, and to the same extent, as a man would be to disregard the qualifying clause of said section 2, which confers upon her the authority to 'enter into any contract with reference to the same. [her property] in the same manner, to the same extent, and with like effect as a married man may in relation to his real and personal property.' If the Legislature had intended to wholly remove the common-law disabilities of a married woman, and give her general power to make contracts of all kinds, this intention, doubtless, would have been expressed in apt and appropriate language. It would have expressly enacted that she could bind herself and her property by her general engagements whether made or entered into for the benefit, or on account of, her separate property or not, instead of empowering her to contract alone with reference to her own property, trade, and business. In construing this statute it is important to bear in mind that the Legislature was not attempting to impose disabilities upon married women, but was engaged in removing some of those already existing. She can contract only so far as her disabilities have been so removed by the Legislature. The statute requires that contracts, to be valid, must be entered into with reference to her separate property, and it is for the courts to so construe this enactment as to carry out the legislative will. It is true section 3 permits a married woman to sue and be sued, but this does not authorize the recovery of a judgment against her when no cause of action exists, nor does it attempt to declare what contracts of hers will support an action; what are valid or what are nugatory. The construction we have given the statute is in accord with numerous decisions of this court. Davis v. First Nat. Bank of Cheyenne, 5 Neb. 242, 25 Am. Rep. 484; Hale v. Christy, 8 Neb. 264; Spaun v. Mercer, 8 Neb. 357, 7 N. W. 245; State Savings Bank v. Scott, 10 Neb. 83, 4 N. W. 314; Barnum v. Young, 10 Neb. 309, 4 N. W. 1054; Gillespie v. Smith, 20 Neb. 455, 30 N. W. 526; Eckman v. Scott, 34 Neb. 817, 52 N. W. 822; Godfrey v. Megahan, 38 Neb. 748, 57 N. W. 284; Buffalo County Nat. Bank v. Sharpe, 40 Neb. 123, 58 N. W. 734; McKinney v. Hopwood, 46 Neb. 871, 65 N. W. 1055."

Thus the power of a married woman to bind herself or her property by her contracts in Nebraska may now be said to be clearly settled by the Supreme Court of that state, and the question at issue, the power of a married woman to bind her after-acquired real estate by covenants in a joint mortgage with her husband, made on his property for his benefit, is denied. Had these decisions been promulgated prior to the date of the mortgage in suit, and thus entered into and become a part of the great mass of the law of that state, they would, at least in principle, be controlling here. However, as they were announced subsequently to the date of the mortgage, they are entitled only to that persuasive weight accorded by this court to the decisions of the highest judicial tribunal of a state when construing the statutory law of such state. It becomes necessary, therefore, to examine the prior decisions of the state, cited and relied upon in support of these decisions, to determine what the law was on the question under investigation at the time the mortgage in suit was made. Davis

v. First Nat. Bank of Cheyenne, supra, was the first case arising after
the passage of the act of 1871, and was an action on a promissory note
made by Mrs. Davis to the bank in settlement of an overdraft made
by her on her account.   She was held liable on this note because it
was a transaction in relation to her separate property.   The court ob-
serving, however, in the course of the opinion:

> "But the rule must be observed, that all such contracts of a feme covert
> must be with the reference to, and upon the faith and credit of, her separate
> estate."

This ruling was adverted to in Hale v. Christy, supra, as follows:

> "It is urged by counsel for Mrs. Christy that owing to her coverture she
> incurred no personal liability by signing said note.   This, no doubt, is true,
> and the finding of the court below that she was liable cannot be upheld.
> Even under the very liberal provisions of our more recent legislation respect-
> ing the rights of married women, this court has already held that to bind her
> the contract must be made with reference to and upon the faith and credit of
> her separate estate."

This is also the effect of the decision in Stover v. Tompkins, 34
Neb. 465, 51 N. W. 1040.

In State Savings Bank v. Scott, supra, it was held:

> "A wife is bound by her contracts, when made with reference to or upon
> the faith and credit of her separate estate, but she is not bound as surety
> upon a promissory note, unless it appears that she intended thereby to bind
> her separate estate."

A like ruling was made in Barnum v. Young.

Godfrey v. Megahan, supra, was an action against a husband and
wife upon a promissory note executed by them for a pre-existing
debt of the husband; the wife signing the same as surety.   The syllabus
in that case reads:

> "(1) The disability of a married woman to make a valid contract remains
> the same as at common law, except in so far as such disability has been
> removed by our statutes.
>
> "(2) The statute has removed the common-law disability of a married
> woman to make contracts only in case where the contract made has reference
> to her separate property, trade, or business, or was made upon the faith and
> credit thereof, and with intent on her part to thereby bind her separate
> property.
>
> "(3) Whether a contract of a married woman was made with reference to
> her separate property, trade, or business, or upon the faith and credit thereof,
> and with intent on her part to thereby bind her separate property, is always
> a question of fact."

In Buffalo County Nat. Bank v. Sharpe, supra, it was held where a
married woman executes a mortgage on her real estate to secure the
debt of her husband, her separate estate to the extent of the property
mortgaged is bound for the payment of such debt.   In Briggs v. First
National Bank of Beatrice, 41 Neb. 17, 59 N. W. 351, a married
woman executed a note as surety.   The note contained a clause pledging
her separate estate for its payment.   She was held liable because by the
express terms of the note she bound her separate estate.   From an
examination of the decisions of the Supreme Court of Nebraska, we
have failed to find any case in which it has been held the common-law
disability of a married woman to bind herself by her contract has been
abrogated by statute.   On the contrary, the rule that her contracts, to

be valid, must be made with reference to and upon the faith and credit of her separate property, and that her intention to bind her separate estate must be disclosed, has always obtained.

We are of the opinion the decisions of that court in the late cases of Grand Island Banking Company v. Wright, supra, and Kocher v. Cornell, supra, are the logical and necessary result of the prior decisions of that state. The case of Real v. Hollister, 17 Neb. 661, 24 N. W. 333, cited to the contrary, is not thought to be out of harmony with the prevailing doctrine. In that case, while the wife, Ellen Real, claimed to own and was in possession of the real estate, she jointly with her husband conveyed it by warranty deed with full covenants. Hollister, as a subsequent grantee holding under this deed, was evicted because Ellen Real did not have title to the property when she conveyed. The action was brought to recover against her and her husband for breach of covenant. She defended on the ground her covenants were contained in a joint deed with her husband. Therefore, she was not liable under section 48 of chapter 73, Comp. St. 1885, being section 53 of the law of 1866. The court held:

"Under the provisions of the act of the Legislature of 1871, commonly known as 'the Married Woman's Act,' a married woman is liable upon her covenants of warranty in the sale of real estate which is her separate property, whether she be joined by her husband in such conveyance or not; section 48 of chapter 73, Comp. St. 1885, having been passed in 1866, being by said act abrogated to that extent."

In that case the liability of Mrs. Real for the breach of her covenants was expressly placed on the ground that the conveyance containing the covenants was made in relation to her separate property. Such ruling was not a departure from the former decisions of the court.

From the facts stated above, it is seen the legal title to the property described in the mortgage was in the husband, Martin Burns, at the date of the execution of the mortgage. A life estate alone was in his wife, Mary Burns. The mortgage was made for the use and benefit of the husband. At this time the beneficial interest of the remainder was in the minor children because of the fraudulent character of their guardian's deed. The mother, Mary Burns, at the time, had no interest in this remainder. She did not contract with reference to it, for she owned no interest in it. She was given no credit on the strength of it being her separate property, for the public records showed she did not own it and had no interest in it. By the execution of the note and mortgage she evidenced no intention of binding any separate property then belonging to her, or of which she might thereafter become possessed, save her life estate alone. By the terms of the mortgage she did bind her then interest in the property, her life estate, to the payment of the debt of her husband. This she might do. Further than this, the common-law rule, as modified by statute in that state, as such statutes were construed by the Supreme Court at the date of the transaction, did not permit her to go. This construction finds support in the language employed in the acts. As has been seen, by the common law, Mary Burns was without power to bind herself or her life estate by the covenants contained in the

mortgage in suit. By section 42, c. 73, Comp. St. 1885, being section 47 of the act of 1866, she was empowered to convey this real estate by her deed, which, under the terms of the act, included the power to mortgage. But by section 48 of the same act she was absolutely forbidden to bind herself by any covenant she might have made in attempting to mortgage her life estate by joint mortgage with her husband, as was done in this case. In this state of the law the act of 1871 was passed. By section 2 of that act she was empowered to mortgage her real estate, which consisted of her life estate in the property, and in mortgaging it to make any contract in relation thereto a married man might make. This included the power to covenant, either jointly with her husband, or severally, binding her to the performance of the conditions of such contract or covenant, in so far only, and no farther, than such contract or covenants related to her life estate in the property. This, clearly, was the judicial construction placed upon the acts in question by the Supreme Court of the state at the time the mortgage in question was made. By that construction this court is bound. It follows, therefore, appellant, Mary Burns, was without power to bind the interest in the property which she acquired by reason of the death of her son, Jeremiah Foley, or by purchase from her daughter, Mary E. Dill, after the making of the mortgage in question.

Nor is she estopped from now claiming the property free from the lien of the mortgage. The law is well settled that a covenant in a deed or mortgage made without power, and therefore not binding as a contract, does not work an estoppel to claim an after-acquired interest in the property. In Bank of America v. Banks, 101 U. S. 240, 25 L. Ed. 850, Mr. Justice Clifford, delivering the opinion of the court, said:

"Much discussion of the question of estoppel is unnecessary; as it is clear that a married woman cannot, by her own act, enlarge her capacity to convey or bind her separate estate. * * * In order to work an estoppel, the parties to a deed must be sui juris competent to make it effectual as a contract. Hence, a married woman is not estopped by her covenants."

See, also, Wight & Others v. Shaw, 5 Cush. (Mass.) 66; Comstock v. Smith, 13 Pick. (Mass.) 117, 23 Am. Dec. 670.

The conclusion reached may indirectly work a benefit to the party originally guilty of the fraud that made possible this controversy, a consummation not desired, but unavoidable in view of the rights of innocent parties directly interested.

It follows, from what has been said, in so far as the decree entered confined the lien of the taxes to less than the entire estate in the property involved, it is erroneous, and must be reversed on the cross-appeal of complainant below. It is so ordered. It is further found, in so far as the decree fixed the lien of the mortgage in suit upon a greater interest in the property described therein than the life estate of appellant, Mary Burns, as held by her at the date of the mortgage, it is erroneous, and must be reversed on the appeal of Mary Burns, and it is so ordered. It is further ordered that a decree enter in conformity with this opinion.