## HAMPTON *v.* COOK.

### Opinion delivered October 23, 1897.

ESTATE BY CURTESY—PRIORITY.—Where issue of a marriage is born alive, and the wife dies seised of land and intestate, the husband's right to curtesy in the land is superior to the claims of her judgment creditors, although during her life they might have had the land sold under execution, and thereby have extinguished the estate by the curtesy. (Page 355.)

Appeal from Woodruff Circuit Court.

H. N. HUTTON, Judge.

*Fletcher Rolleson,* for appellants.

The husband's right to curtesy is subject to the claims of the wife's creditors. Hilliard, Real Prop. (14 Ed.) p. 117; 47 Ark. 175; 4 Am. & Eng. Enc. Law, 963, and cases; 46 Ark. 376; 42 Ark. 26. The husband, not being a party to the suit as such, had no right to interpose his claim for curtesy. The appellants were judgment creditors, with liens which could have

been enforced by sale of the wife's lands; hence their rights were superior to the husband's right to curtesy.

*N. W. Norton* and *P. R. Andrews*, for appellees.

The husband is entitled to his curtesy if there was issue born alive, and the wife died without disposing of her real estate. 47 Ark. 175; Cord, Mar. Wom. §§ 611, 714; 50 Miss. 593; 4 Gill & J. 395; Kelly, Mar. Wom. 95; 4 Am. & Eng. Enc. Law, 967. It is not material that the present controversy is between husband and creditors, and not between husband and heirs.

BATTLE, J.   John J. Cook and Ella E. Cook were husband and wife. Issue of their marriage was born alive. The wife carried on a mercantile business on her sole and separate account, and during the course of the business acquired certain real estate, consisting of farms and houses. Hampton, Reed & Co. sold goods to her, and upon the debts thereby created obtained judgments against her in the Woodruff circuit court. She mortgaged the lands and houses to the Bank of Newport. Thereafter, in 1892, she died intestate, leaving her husband and children of their marriage surviving. He became administrator of her estate, and collected moneys for the rent of the lands accruing after the death of his intestate. The judgment of Hampton, Reed & Co. was allowed by the probate court against the estate in the third class. After the collection of of the rents by the administrator, the lands and houses were sold under the mortgage of the Bank of Newport, in 1895. The administrator filed a settlement in the probate court, and failed to charge himself with the rents. Hampton, Reed & Co. excepted to it on the ground that he had failed to do so. The exception was sustained, and the court ordered him to charge himself with the rents, which he did, debiting himself with $420.52. The probate court thereupon ordered him to pay that sum to Hampton, Reed & Co. on their judgment, it being superior to all other claims allowed against the estate. From this order the administrator appealed to the circuit court, which reversed the order, holding that the administrator should not be charged with the rents, because he, in his individual capacity, was entitled to hold them as tenant by the curtesy. From the

latter judgment, Hampton, Reed & Co. have appealed to this court.

It is conceded that the only question presented by the latter appeal for our consideration is, is Cook, as tenant by the curtesy, entitled to the rents and profits in controversy? The sufficiency of the estate of the wife in the land to support tenancy by the curtesy is not denied. But appellants insist that their right to the rents is superior to that of Cook as tenant by the curtesy. They base this contention upon the facts that they were judgment creditors of the deceased wife, with a lien which they could have foreclosed by a sale of her lands in her lifetime, and thereby extinguished the right to curtesy claimed by Cook. Their claim is based solely on this foundation. Is it tenable?

. The judgment of the appellants was a general lien on the lands of Mrs. Cook. When she died, the lien ceased to exist, and her estate became subject to the exclusive jurisdiction of the probate court, which was put in actual exercise by the grant of letters of administration to her husband. Her entire estate, real and personal, passed into the custody of the law, to be disposed of under the authority of the probate court, or until the purposes for which it was placed there were or shall be fully subserved. After that appellants could only enforce the payment of their judgment in that court. Their right to the appropriation of any part of the property of the estate to the payment of their claim, and the manner in which, as well as the extent to which, it could be appropriated, were fixed by the statutes of administration. Under these statutes they were, upon proper proceedings, held entitled to an allowance of their claim against the estate in the third class, and to be paid, after the claims in the first and second classes were fully satisfied, out of any moneys of the estate then remaining or thereafter coming into the hands of the administrator, if there were or should be sufficient to pay all claims in the third class, and, if not, to receive in proportion to other creditors in the same class. This was the extent to which they could enforce their judgment against the estate. *Branch* v. *Horner*, 28 Ark. 341, 342; *Powell* v. *Macon*, 40 Ark. 541, 544; *Hornor* v. *Hanks*, 22 Ark. 572, 584; *Meredith* v. *Scallion*, 51 Ark. 361, 366.

Did the husband take curtesy in the lands of his deceased wife subject to the claims of her creditors? To understand fully the interest he took it is necessary to consider the common law upon this subject. At common law the husband, upon the birth of a child of the marriage alive, became a tenant by the curtesy of all the lands of his wife of which during coverture she was so seized as to support such an estate. He became entitled to an estate for his own life, in his own right, as tenant by the curtesy initiate, which became consummate upon the death of the wife. The estate was not acquired by descent, but vested in him by virtue of his marital rights, in the lifetime of his wife, independently of all debts, and consequently did not vest in him at her death subject to her debts, if any. In this respect it was unlimited and without restrictions or conditions.

In this state, curtesy has not been the subject of legislation. The common law upon that subject prevails, except as modified or changed by the statute, which provides: "The property, both real and personal, which any married woman now owns, or has had conveyed to her by any person in good faith and without prejudice to existing creditors, or which she may have acquired as her sole and separate property; that which comes to her by gift, bequest, descent, grant, or conveyance from any person; that which she has acquired by her trade, business, labor or services carried on or performed on her sole or separate account; that which a married woman in this state holds or owns at the time of her marriage, and the rents, issues and proceeds of all such property shall, notwithstanding her marriage, be and remain her sole and separate property, and may be used, collected and invested by her, in her own name, and shall not be subject to the interference or control of her husband or liable for his debts, except such debts as may have been contracted for the support of herself or her children by her as his agent" (Sand. & H. Dig., § 4945); and by the section of the constitution which declares: "The real and personal property of any *femme covert* in this state, acquired either before or after marriage, whether by gift, grant, devise or otherwise, shall, so long as she may choose, be and remain her separate estate and property, and may be devised, bequeathed or conveyed by her, the same as if she was a *femme sole*, and the same shall not be

subject to the debts of her husband." Article 9, section 7, Constitution of 1874.

In *Neelly* v. *Lancaster*, 47 Ark. 175, this court held that the effect of the statute and constitution "upon the rights of the husband in her real estate was to exclude his marital rights during her life, and to secure to her the rights to use and dispose of it at will; but if she makes no disposal of it, and there be issue of the marriage born alive, his title by curtesy consummate attaches at her death as at common law." The effect of this decision is that the constitution and statutes of this state take away the husband's rights by the curtesy so far, and so far only, as their express words or plain implications affirmatively require. It follows that the estate by curtesy consummate which vests in the husband at the death of his wife in this state, in respect to creditors unsecured by specific liens on her lands, is as great as that vested in him at common law, and that he takes the estate independently of such creditors,—not subject to the debts owing to them.

The judgment of the circuit court is affirmed.