ALLEN-WEST COMMISSION CO. v. GRUMBLES.

(Circuit Court, W. D. Arkansas, Texarkana Division. January 30, 1908.)

GARNISHMENT—PERSONS SUBJECT TO GARNISHMENT—WIFE OF DEFENDANT.

Under the law of Arkansas, a wife is subject to the common-law disabilities of coverture, except as they have been expressly removed by the married women's statutes, which are strictly construed to preserve her common-law rights. A husband cannot obtain a valid judgment against his wife, and for like reason an action cannot be maintained against her as garnishee by a creditor of her husband, under Kirby's Dig. Ark. § 379, to recover a personal judgment against her, or for the proceeds of property given her by her husband in fraud of his creditors, which proceeds she held at the time of garnishment, but subsequently returned to him.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 24, Garnishment, § 189.

Following state practice, see notes to O'Connell v. Reed, 5 C. C. A. 606; Nederland Life Ins. Co. v. Hall, 27 C. C. A. 398.]

Moore, Smith & Moore, for plaintiff.

Rose, Hemingway & Rose and Cantrell & Loughborough, for defendant.

ROGERS, District Judge. The original case, out of which this one grows, was before the United States Circuit Court of Appeals for the Eighth Circuit, and is reported in 129 Fed. 287, 63 C. C. A. 401. In the original case, the court dissolved the attachment against the defendant, J. H. Grumbles, and discharged his wife, Mary E. Grumbles, as garnishee. The Court of Appeals reversed the Circuit Court as to both issues, and remanded the cause to be proceeded with in conformity to that opinion. In that case the counsel for the Allen-West Commission Company urged the Court of Appeals to order the Circuit Court to direct Mary E. Grumbles, the garnishee, to pay the proceeds of the sale of the stock of J. H. Grumbles, which she had received and sold, into the Circuit Court, upon the reversal of the judgment dissolving the attachment, and discharge the garnishee. The Court of Appeals refused to do so, saying:

"She has not appeared in person or been examined under oath. She has not made default in appearance. She appeared by her affidavit, in which she denied that she was in possession of any of the property of the defendant, and denied that she was indebted to him. In this state of the case, the court below may undoubtedly compel her to appear in person and to submit to an examination under oath, and then, if the evidence sustains the charge of the plaintiff, it may order her to pay the proceeds of the sale of the stock into court; but, in the absence of any proceeding of this character and of any appearance of Mrs. Grumbles in person, the remedy of the plaintiff is to proceed against her by an action under section 360, Sand. & H. Dig., which provides that, when the garnishee fails to make a disclosure satisfactory to the plaintiff, he may proceed in an action against her by filing a complaint and causing a summons to be issued upon it. The time has not yet arrived under these statutes when the plaintiff is entitled to an order on the garnishee to pay the moneys she obtained from the sale of the stock into court."

What character of action plaintiff should bring, whether at law or equity, the court does not say, nor does the statute prescribe. The statutes referred to by the court in the quotation above are Sandel's &

H. Dig. §§ 357, 358, 359, or Kirby's Dig. §§ 376, 377, and 378, and are as follows:

"Sec. 376. Each garnishee summoned shall appear. The appearance may be in person or by affidavit of the garnishee filed in court, disclosing truly the amount owing by him to the defendant, whether due or not, and the property of the defendant in the possession or under the control of the garnishee; and, in the case of a corporation, any shares of stocks held by or for the benefit of the defendant, at or after the service of the order of attachment.

"Sec. 377. Where a garnishee, or officer of a corporation summoned as a garnishee, appears in person, he may be examined on oath; and if it is discovered on such examination that, at or after the service of the order of attachment upon him, he or the corporation was possessed of any property of the defendant, or was indebted to him, the court may order the delivery of such property, and the payment or security for the payment of the amount owing by the garnishee into the court, or to such person as it may direct, who shall give bond, with security for the same; or, the court may permit the garnishee to retain the property or the amount owing, upon the execution of a bond, with one or more sufficient sureties to the effect that the amount shall be paid or the property shall be forthcoming, as the court may direct. Performance of these bonds may be summarily enforced by orders and proceedings as in cases of contempt.

"Sec. 378. The court may, on the motion of the plaintiff, compel the appearance in person and examination of any garnishee or officer of a corporation summoned as a garnishee by process as in cases of contempt; or, where a garnishee makes a default by not appearing, it may hear proof of any debt or property owing or held by him to or for the defendant, and make such order in relation thereto as if what is so proved had appeared on the examination of the garnishee."

The Court of Appeals, in so holding, followed the decision of the Supreme Court of Arkansas construing those statutes, by which it was bound. Giles v. Hicks, 45 Ark. 271; Railway Company v. Richter, 48 Ark. 349, 3 S. W. 56; Penyan v. Berry, 52 Ark. 130, 12 S. W. 241.

When the case was remanded to the Circuit Court, and the proper orders entered, the plaintiff elected to proceed under section 379, Kirby's Dig., which is as follows:

"Sec. 379. Upon the service of a summons upon any garnishee, or after his failure to make a disclosure satisfactory to the plaintiff, the latter may proceed in an action against him by filing a complaint verified as in other cases, and causing a summons to be issued upon it; and thereupon such proceeding may be had as in other actions, and judgment be rendered in favor of the plaintiff to subject the property of the defendant in the hands of the garnishee, or for what shall appear to be owing to the defendant by the garnishee. The judgment may be enforced by execution or other proper means."

And the cause is now here on a complaint at law filed against Mary E. Grumbles, under that section of the statute. Two defenses are set up: First, that defendant did not have in her possession, or under her control, any sum of money or credits belonging to J. H. Grumbles, and was not indebted to him in any sum when the summons was served upon her as garnishee; second, that she is now and has been the wife of J. H. Grumbles for 40 years, under disability of coverture, and incapable of making any contract.

The question arises: Can a personal judgment be rendered against a married woman garnished for her husband's debt? The answer to this question must settle the whole case. It is not without difficulty, and the authorities conflict, depending much, no doubt, on the statutes

of the different states fixing the status of married women. On the face of the statutes of Arkansas, supra, it would appear that any person may be garnished, including married women, lunatics, and infants; but, in arriving at the intention of the Legislature in the enactment of these statutes, the legal status of married women at that time, under the statutes of Arkansas, must be considered. They were enacted under the Civil Code, nearly 40 years ago. The pertinent provisions of the married women's law were not enacted until 1873 Kirby's Digest, §§ 5212–5220. Clearly when enacted they were not intended to apply to married women, then practically under full common-law disabilities. Many of these disabilities have by recent statutes been removed; but the Supreme Court of Arkansas has still adhered to the common-law rule, and construed all such statutes strictly. The act of December 15, 1875 (Kirby's Dig. § 5229), does not modify the common-law rule of construction always applied by that court. It only applies to that act, of which it is a part, and which relates to scheduling the separate property of married women. That the Supreme Court of Arkansas has constantly and rigidly held to the rule of the common law in construing the married women's statute will be fully verified by a glance at the decisions in footnote to Kirby's Dig. p. 1114. See, also, Sparks v. Moore, 66 Ark. 437, 56 S. W. 1064, Hampton v. Cook, 64 Ark. 353, 42 S. W. 535, 62 Am. St. Rep. 194, and Gilkerson-Sloss Comm. Co. v. Salinger, 56 Ark. 294, 19 S. W. 747, 16 L. R. A. 526, 35 Am. St. Rep. 105, in which last case that court held that a wife could not form a partnership with her husband, basing the decision expressly on the grounds that her common-law disability to contract with her husband was not removed. In Countz v. Markling, 30 Ark. 17, it was held that a judgment being found in favor of the husband as against his wife was void, and in Pillow v. Wade, 31 Ark. 678, that husband and wife are incapable of contracting with each other. See other cases there collated. The general rule is that an infant may be held as garnishee on account of any personal property in his hands belonging to the principal debtor and for any debt that he has contracted in the purchase of necessaries (2 Shinn on Attachment and Garnishment, § 530; Scofield v. White, 29 Vt. 330; Wilder v. Eldridge, 17 Vt. 226), but an infant may bind himself by a fair contract for necessaries furnished him. Could it be fairly said that, under our garnishment laws, an infant could be garnisheed on any and all contracts? The statute is broad enough to admit that construction, but, manifestly, that was not the intention of the Legislature.

It may be conceded, for the purposes of this case, though not decided, that if this was a proceeding under sections 377 and 378 of Kirby's Digest, and at the trial it was found that defendant Mary E. Grumbles was in possession or had under her control any property belonging to her husband, by proper orders, the court might compel her to surrender it to be applied to his debts; but, as we have seen, this proceeding is not under those sections. It is under section 379 of Kirby's Digest, and no relief can be had in such action under the proof, and none is sought, except by the rendition of a personal judgment against her and the issuance of an execution thereon. This is necessarily so, because, if anything else were prayed, no judgment can be rendered in favor of

plaintiff to subject the property of the principal defendant, J. H. Grumbles, in the hands of his wife, the garnishee, or for what she appeared to be owing the defendant by the garnishee, for the reasons: First, that the proof shows she has no property of J. H. Grumbles in her hands or under her control; second, there is no proof to show that she ever owed the defendant J. H. Grumbles any money. The fact is, the money she had when garnished has been surrendered to J. H. Grumbles, and the relation of debtor and creditor never did exist between them. He had given her the stock, and the gift was valid between them. It was voidable only as to creditors. She returned it to him, not because she owed it, but, presumably, because she found she could not hold it as against his creditors. Nor was she a bailee. That relation did not subsist. Indeed, there was no contractual relation between the principal defendant and his wife. She was, by implication of law, a trustee, after the garnishment was served on her, so far as the plaintiff is concerned, and she was the owner in her own right, so far as all persons except plaintiff were concerned, of the stock or proceeds thereof in question.

The general rule is that no claim can be secured by garnishment against a debtor, unless his creditor, the principal defendant in the suit, can maintain a common-law action for the same, if due or when it becomes due. In other words, there must be such a liability on the part of the garnishee that would enable the principal defendant to maintain an action in his own name and for his own use directly against the garnishee, and to recover a judgment thereon (2 Shinn on Attachment and Garnishment, §§ 475, 476, 477, and cases there cited); and plaintiff by garnishment cannot place himself in a superior position as regards a recovery than is occupied by the principal defendant (Id. § 516, and cases cited). The above rule is subject, under the weight of modern decisions, to the exception that, where one is in possession of property of another upon a contract which was fraudulent as to creditors, it may, in his hands, be reached by garnishment. Id. § 484, and cases cited. But this exception is applicable to garnishees generally, and throws no light upon the question as to whether a wife can be garnished and a personal judgment rendered against her for the debt of her husband. The correct rule is, no doubt, stated in 2 Waples on Attachment, § 350, to the effect that:

"Where anything like the common-law relation of husband and wife is preserved, there can be no doubt that the wife is an improper party to summon as garnishee in an action against her husband."

The question in Arkansas is an original one, and must be examined in view of the statutes modifying the common law and fixing the status of married women. Before doing so, however, it is well enough to examine some of the authorities pro and con. Odend'hal v. Devlin, 48 Md. 440, is cited to show that the husband may be garnished for the wife's debt. The statutes of Maryland are not accessible, but in that case the court say:

"It is settled that the relation of debtor and creditor may exist between husband and wife growing out of the appropriation by him of his wife's separate estate, and is founded on an agreement by him to repay the moneys or property so appropriated. Edelen v. Edelen, 11 Md. 415. When such a debt

exists, the creditor of the wife, by a proceeding like the present, may make the husband a garnishee, with respect thereto. The marital relations in this state have been materially changed by the Code as far as rights of property are concerned. The wife may be seised of the legal estate in lands, and she may hold the legal property in personaity, in her own right; no trustee being necessary, and, in respect to property held to her sole and separate use, she has the right to resort to courts of law or equity for its protection. A married woman carrying on business in her own name as a sole trader contracts debts in respect to her business as if she were a feme sole. The remedy given to her creditors for the recovery of debts due them, by the process of attachments against her property, and credits, would be nugatory and worthless, if she could be permitted to place her funds or property in the hands of her husband, and it should be held that an attachment of this kind could not be laid in his hands as garnishee"

It is not believed this case is in point for two reasons: (1) It is the husband, not the wife, that is garnished; (2) the law of Maryland allowed the wife to resort to courts of law, as against her husband, if he was indebted to her. ·

Claremount Bank v. Clark, 46 N. H. 134, is cited by plaintiff's counsel in support of their contention; but the question therein was, not whether a personal judgment could be rendered against a garnished wife, but whether she could be compelled to answer questions in relation to her title to real estate attached in the suit, fraudulently conveyed to her by her husband and of which he held possession when attached. She was held to answer. The court said:

"By the statutes of this state a married woman may, under certain circumstances, make contracts, and with her husband even, which will be valid at law (Albin v. Lord, 39 N. H. 196), and in various cases may sue and be sued in her own name as if she were sole and unmarried (Rev. St. 1842, c. 149, § 3; Laws 1846, p. 308, c. 327, § 4; Laws 1860, p. 2248, c. 2342, § 3; Jordan v. Cummings, 43 N. H. 134; Ames v. Foster, 42 N. H. 382). The terms of these statutes are so broad as to allow, in certain instances, suits at law between husband and wife, and they are not coupled with any alternative clause like that in the statute of Maine, upon which the decision in Smith v. Gorman, 41 Me. 405, is placed by the court, and this natural construction of the language of these statutes is required by their general design. Albin v. Lord, 39 N. H. 203. In the present case, as Mrs. Clark may be liable as the trustee, either of her husband or of others of the defendants, notwithstanding her coverture, the mere fact that she is the wife of one of the defendants is insufficient to excuse her from answering the first question."

See, also, Jones v. Roberts, 60 N. H. 217.

This case does not seem to be in point. It relates to answering questions as garnishee.

In Clough v. Russell and Trustee, 55 N. H. 279, it is held that the wife may loan her money to her husband and recover judgment at law against him on a note given therefor. This last case discloses that in New Hampshire the common-law disability growing out of coverture does not exist in that state as between husband and wife. She may lease to him land, or make any other contract with him in relation to her separate estate, and enforce it by any proper action in court.

In Mary J. O'Brien (habeas corpus) 24 Wis. 547, it was held that, in such a proceeding as this, the wife might be compelled to answer questions in relation to property in her hands belonging to her husband.

In Berles v. Allen A. Adsit, 102 Mich. 495, 60 N. W. 967, it was held that, under a statute which provides that:

161 F.—30

"A husband shall not be examined as a witness for or against his wife without her consent, nor a wife for or against her husband without his consent, except in certain cases, a wife, when garnished in a suit against her husband, cannot, without his consent, be examined as to transfers of property made to her by her husband." De Farges v Ryland, 87 Va. 404, 12 S. E. 805, 24 Am. St. Rep. 659; Niland v. Kalish, 37 Neb. 47, 55 N. W. 295; Wolford v. Farnham, 44 Minn. 159, 46 N. W. 295.

A similar statute exists in Arkansas. Kirby's Dig. § 3095, is as follows:

"The following persons shall be incompetent to testify: * * * Fourth. Husband and wife for or against each other, concerning any communication made by one to the other during the marriage, whether called as a witness while that relation subsists or afterwards, but either shall be allowed to testify for the other in regard to any business transacted by the one for the other in the capacity of agent."

In Mary Smith v. Michael Gorman et al., 41 Me. 408, it is distinctly held, under a statute broader than the Arkansas statute as to married women, that she cannot maintain an action against her husband. The court say:

"By the common law a wife can only enforce her rights in conjunction with her husband. By St. 1848, p. 61, c. 73, the wife is authorized to bring an action in her own name in vindication of her rights. So far as the statute gives her authority, she may commence and prosecute suits, and no further. By section 1 'she may commence, prosecute and defend any suit in law or equity to final judgment and execution in her own name, in the same manner as if she were unmarried, or she may prosecute or· defend such suit jointly with her husband.' The statute is in derogation of the common law, and is not to be construed as giving the wife a right° of action against the husband, unless it results from the express terms of the statute, or from necessary implication. The alternative is given to the wife to sue in her own name, or 'jointly with her husband.' The authority is in the alternative, and in either case is coextensive. As the husband and wife cannot. 'jointly' maintain an action against the husband, so neither can the wife alone. So the right of prosecution and of defense is coextensive. If the wife may sue the husband, the husband may sue the wife. The statute gives no mutual right of action between each other, to the husband and wife, and none such exists by the common law."

In Iowa, in Enneking v. Scholtz et al., 69 Iowa, 473, 29 N. W. 422, the broad doctrine is recognized that a personal judgment may be rendered against the wife as garnishee of the husband. What the legal status of the married woman is in that state is not known. The statutes are not accessible, but the question here presented is not found mentioned, much less discussed, and it is therefore assumed that in Iowa the disabilities of coverture have been removed. See, also, Thompson v. Silvers, 59 Iowa, 671, 13 N. W. 854.

I do not think the cases referred to aid materially in the solution of the question at bar. The last clause of section 5214, Kirby's Dig., shows that a married woman may alone sue or be sued in the courts of Arkansas on account of her separate property, business, or service. To that extent her common-law disabilities have been removed as to suits of law and equity; but in the state of Arkansas no decision of the Supreme Court of Arkansas has been cited or found which relieves her of her common-law disability. As to her legal status with her husband, as we have seen, she cannot form a copartnership with him,

a judgment in his favor against her is void, and the contract of a married woman, unless for the benefit of herself or her separate estate in relation to her separate business, cannot be enforced against her estate. Stowell v. Grider, 48 Ark. 220, 2 S. W. 786; Crenshaw v. Collier, 70 Ark. 5, 65 S. W 709. Her power to contract generally is not enlarged by the constitutional provision in the married women's act. Walker v. Jessup, 43 Ark. 174.

In Munday v. Collier, Adm., 52 Ark. 126, 12 S. W. 240, the wife's administrator sued the husband at law on a note for borrowed money, her separate estate. Judgment was recovered, the husband appealed, and the Supreme Court affirmed the judgment, saying:

"Whether a note given by a husband to his wife for borrowed money constitutes a legal liability or not, it is clearly a claim which equity will enforce against him; and where the wife's administrator sues the husband at law upon such note, the error, if any, in the form of the proceeding, will be waived by the defendant's failure to move a transfer to the proper docket."

In Pillow v. Sentelle, 49 Ark. 431, 5 S. W. 787, in equity, the question arose whether Pillow's notes to his wife were valid. The court said:

"At common law, contracts between husband and wife are void; but equity will enforce a promise made by a husband to his wife to repay her a bona fide loan out of her own separate estate"—citing a large number of cases, state and federal.

I have noticed these cases as indicating the trend of the decisions of the Supreme Court of Arkansas as to the legal status of married women in this state. The statutes and decisions in Arkansas amount to this: A woman is sui juris, as to her separate estate, as to the business in which she may engage on her separate account, and as to services she may render to third persons. For instance, she may make her husband her agent as to her separate estate, or employ him in connection with her separate business. As to these he may testify for her, and as to third persons she may contract as a feme sole. But except as the common law is expressly or by implication modified by statute, the common-law disabilities of coverture remain. She cannot form a partnership with her husband; she cannot sue him at law; generally the one cannot testify against the other; the communications between them are sacred. He is still, in certain events, a tenant by the curtesy, and their domestic relations generally are governed by the rules of the common law, except as modified by statute, and such statutes are construed strictly to preserve the common-law rights of married women. Burns v. Cooper et al., 140 Fed. 282 et seq., 72 C. C. A. 25. If the husband cannot recover any judgment at law against the wife, neither can his creditor recover any judgment at law against her as garnishee for a debt due by the husband to his creditor, or for the proceeds of stock assigned to her in fraud of his creditors and held by her when garnished, and which she afterwards returned to her husband. This seems to be the rule followed by the Supreme Court of the United States ever since Phipps v. Sedgwick, 95 U. S. 9, 24 L. Ed. 591, in which the court said:

"While the books of reports are full of cases in which real or personal property conveyed to the wife in fraud of the husband's creditors has been pur-

sued and subjected to the payment of his debts after it had been identified in her hands, or in the hands of voluntary grantees or purchasers with notice we are not aware of any well-considered case of high authority where the pursuit of the property has been abandoned, and a judgment in personam for its value taken against the wife. Certainly no such doctrine is sanctioned by the common law; and, though the present suit is a bill in chancery, the decree in this case is nothing more than a judgment at law, and could as well have been maintained in a separate suit at law for the money as in this suit. And the liability of the executors of the wife to this personal judgment must depend on the same principle as if, abandoning the pursuit of the res, the assignee had brought a suit at law for the money. The statutes of the different states have gone very far in this country to modify the peculiar relations of husband and wife, as they existed at common law, in reference to their property; but they have not, except perhaps in Louisiana, gone so far as to recognize the civil-law rule of perfect independence in dealing with each other. While the statutes of New York have recognized certain rights of the wife to deal with and contract in reference to her separate property, they fall far short of establishing the principle that out of that separate property she can be made liable for money or property received at her husband's hands, which in equity ought to have gone to pay his debts. Equity has been ready, where such property remains in her hands, to restore it to its proper use, but not to hold her separate estate liable for what she has received, and probably spent at his dictation. Such a proposition would be a very unjust one to the wife still under the dominion, control, and personal influence of her husband. In receiving favors at his hands, which she supposed to be the offerings of affection, or a proper provision for her comfort, she would be subjecting that which is her own, or which might afterwards come to her from other sources, to unknown and unsuspected charges, of the amount and nature of which she would be wholly ignorant. It answers the demands of justice in such cases if the creditor, finding the property itself in her hands or in the hands of one holding it with notice, appropriates it to pay his debt; but, if it is beyond his reach, the wife should no more be made liable for it than if the husband himself had spent it in support of his family, or even of his own extravagance."

The case at bar is stronger than that. In this case true Mrs. Grumbles had the money held by the Court of Appeals to belong to her husband when she was garnished, but she gave it back to him, and he has disposed of it; how, is not fully shown. Shall her separate estate, if she has any, be now subjected to an execution on a personal judgment rendered in favor of her husband's creditor to satisfy his debt? This question is fully answered by the last sentence in the above quotation. Trust Co. v. Sedgwick, 97 U. S. 308, 24 L. Ed. 954; Huntington v. Saunders, 120 U. S. 78, 7 Sup. Ct. 356, 30 L. Ed. 580; Clark v. Beecher, 154 U. S. 631, 14 Sup. Ct. 1184, 24 L. Ed. 705.

I conclude that at law no personal judgment can be rendered against Mrs. Grumbles in favor of the plaintiff for her husband's debt or for the proceeds of the stock in question. This conclusion seems to have been acquiesced in by the bar for nearly 40 years, since no case in which the question is involved has ever found its way to the Supreme Court of Arkansas.

The findings are in favor of the defendant.