In the Matter of the Real Estate of Eugenio Lamonica, deceased.

*New Castle, March* 28, 1928.

Rice, J., sitting.

*Daniel De Pace*, for the estate.

*John J. DeLuca*, for petitioner.

Rice, J. The question presented is whether a simple debt contracted by a man before marriage, and not reduced to judgment prior to his marriage, has priority over a widow's dower in the proceeds of the sale of his real estate sold by the administrator for the payment of debts.

The petitioner bases her claim largely upon the language of *Section* 3303 of the *Revised Code of* 1915 and upon authority of the case of *Brinckloe v. Brinckloe* reported as a note to the case of *Griffin v. Reece*, 1 *Har.* 508.

From an examination of the reports of this State and of the records in the office of the Orphans' Court in and for New Castle County, this appears to be the first time since the *Brinckloe Case* was decided that a claim such as the present one has been made in this court. Covering a great many years, it has been the practice of the Orphans' Court to recognize the right of the widow to dower as paramount to such debts. It is my opinion that this practice is fully justified in law and is correct in principle.

*Section* 3303, of the *Revised Code of* 1915, under the chapter title "Dower," provides:

"*Section* 1. WIDOW ENTITLED TO DOWER:—The widow of any man, dying since the sixteenth day of February, A. D. 1816, who during their marriage was seized of an estate of inheritance in any lands, or tenements, within this State, shall have the third part of all the lands and tenements whereof her said husband was seized, as aforesaid, at any time during the marriage, to hold to her as tenant in dower for and during the term of her natural life, free and discharged from all and every the alienations, covenants, debts, liens and incumbrances, made, entered into, contracted, or created by the said husband after the intermarriage, unless she shall have relinquished her right of dower therein by her own voluntary act, according to the existing laws of the State."

*Section* 3303 of the present Code is a restatement of a statute first passed in the year 1816.

Upon authority of the case of *Bush v. Bush,* 5 *Houst.* 245, wherein Chancellor Bates historically considered the right of dower in this State, it may be said that for a century or more prior to the year 1816, the right of dower, as it was known at common law, was not recognized in this State. Such rights as a widow had in the real estate of her deceased husband were statutory and her right of dower, prior to the passage of an act in the year 1750, was by express terms subservient to the debts of all kinds of the husband, whenever and however created. From 1750 until the act of 1816 was passed, the debts of the husband likewise were paramount to the widow's right of dower by implication.

In 1816, however, there was a direct reversal of policy on the part of the Legislature with respect to the right of dower and under the provisions of the act of 1816, the widow's dower was made paramount to the debts of her husband. This act was, to all practical purposes, a restatement of the common law of England respecting dower as it existed at that time.

In *Layton v. Butler,* 4 *Har.* 507, the court said:

"By the act of 1816, the common law was restored, and since then, the wife's dower cannot be barred by the alienation or incumbrances made or suffered by the husband, unless she shall have relinquished her right of dower, by her own voluntary act and deed, in the manner prescribed by the laws of this State. * * * "

And in *Bush v. Bush, supra,* it was said:

"At this time the statute of 1816 is practically the same as the common law of England was at the time it was passed."

Also see case of *Cornog v. Cornog*, 3 *Del. Ch.* 407.

I think it will not be questioned that it was a principle of the common law that simple debts created or contracted before marriage were subservient to the widow's right of dower. If this is true, and it is also true that the statute of 1816 was a restatement of the common law right of dower, then it must follow that after the enactment of the law of 1816 the principles of the common law right of dower as they existed in 1816 would become effective here unless contravened by statute. I have been unable to find any existing statute in this State which either in express terms, or which by implication, provides that common or simple debts created or contracted before marriage are to be preferred to a widow's dower.

It is argued that as the statute of 1816 provides that dower is free and discharged of debts created by the husband after marriage and makes no provision with respect to debts created before marriage, therefore, debts created before marriage are to be preferred to dower by necessary implication. This argument is without merit for the reason that it has been previously stated that the act of 1816 was only a restatement of the common law right of dower and after the passage of the act, the principles of the common law right of dower as existing at the time of the passage of the act thereupon became effective in this State.

There are additional reasons, however, which in my mind are of equal, if not of greater, weight in determining the present question. From 1816 and continuing to the present time, dower has received very favorable consideration from the courts of this State, as will appear from the examination of the reported cases upon this subject. In *Bush v. Bush, supra,* the court said:

"Her claim is preferred to that of other creditors. * * * She is a creditor as well as they, and was thought in 1816 a more meritorious one, being, in legal contemplation, a purchaser of her right when she became [his] wife."

And in *Chandler v. Hollingsworth*, 3 *Del. Ch.* 99, the Chancellor stated:

"Protection, maintenance and dower are the rights inuring to her from

the marriage; and though her dower is inchoate only until the husband's death, it is none the less, in his lifetime, a legal right, vested and indefeasible, except by her own act."

And again in the case of *Green v. Saulsbury*, 6 *Del. Ch.* 371, 33 *A.* 623, it was decided that a widow who elected to take under the provisions of her husband's will in lieu of dower, might have set aside for her, out of the proceeds of a sale for the payment of her husband's debts, a sufficient sum to secure for her the benefit of the will in lieu of dower as against the claims of her husband's creditors, unless the provisions in her favor should be so disproportionate to the value of her dower as would amount to a fraud upon creditors. The Chancellor said:

"But a devise in lieu of dower is one of a different character and of much higher merits. It discharges a highly favored debt due from the testator; it relieves his real estate from a lien imposed by law in favor of his wife in preference to all others with which he himself could have incumbered it by any contract of his own."

Also:

" * * * In view of the positive legislation of the State in respect to securing the rights of the widow in the proceeds of her husband's real estate. * * * "

From the above authorities it may be said that the dower right of a married woman is a valuable right or interest in the real estate of which her husband was seized during coverture, constituting an incumbrance on the husband's title and of which right she may not be divested except by her death before the husband or by her own voluntary act or deed.

If the right of dower, is an incumbrance against her husband's title to real estate, and I believe it is, then there seems to be every reason for holding the lien or incumbrance created by the right of dower attaching is superior to a debt of the husband created before marriage, the debt not being a lien or incumbrance on his real estate at the time the wife's inchoate right of dower attached. It is a recognized principle of law that liens or incumbrances against real estate are to be considered in the order they attach to the real estate unless otherwise provided by statute.

While, in my opinion, both of the above reasons are sufficient for determining this case, yet I believe another and stronger

reason exists in this State why a widow's right of dower must be preferred to simple or common debts contracted by a husband prior to his marriage. *Section* 3417 of the *Revised Code of* 1915 provides for the sale of real estate of a deceased person, on an order of the Orphans' Court, when the person's estate is not sufficient to pay his debts.

*Section* 3420 of the *Revised Code of* 1915, being a section under the same chapter as *Section* 3417 provides that the real estate may be sold free of dower if the widow waives the assignment thereof by metes and bounds and elects to take, in lieu thereof, an equivalent share of the proceeds of the sale of such real estate.

*Section* 3427, under the same chapter, as amended by 35 *Laws of Delaware*, *p*. 595, provides for the payment of the debts of the deceased out of the proceeds of such sales. It provides that after payment of the charges allowed by the Orphans' Court, first class, judgments being liens against the property sold; second class, debts outstanding against the deceased observing the same rule of priority as prescribed by *Chapter* 98, of the *Revised Code of* 1915, § 39, *Chapter* 98, being *Revised Code Section* 3372, provides first, funeral expenses; second, payment for medicines and medical and nursing services; third, wages for services; fourth, rent; fifth, judgments against the deceased; sixth, recognizances, mortgages (other than against the property sold) and other obligations of record; seventh, obligations and contracts under seal; eighth, contracts under hand for the payment of money or the delivery of goods, wares or merchandise; and ninth, other demands.

It will be observed that we have a statute providing for dower, then a statute providing for the sale of decedent's real estate to pay his debts, then a statute which permits a widow in such sales to waive her dower by metes and bounds and to take in lieu thereof an equivalent share of the proceeds of the sale and finally a statute establishing the order for the payment of debts out of the proceeds.

The debt of this claimant falls within the last class of the classes enumerated in the statute as the order for the distribution of the proceeds of sales of this kind, and I have been unable to

understand that process of reasoning which calls for setting aside the order of distribution as expressly provided by law, and results in the taking of a debt in the lower class and placing it in a position of superiority over debts, liens and incumbrances of classes higher in the order of distribution and making it paramount even to dower, when the very same debts, liens and incumbrances of the higher classes by statute are made inferior to the right of dower. The statute affirmatively provides that the widow may waive her dower by metes and bounds and elect to take an equivalent share of the proceeds of sale.

Counsel for the claimant greatly relies upon the case of *Brinckloe v. Brinckloe, supra.* The *Brinckloe Case,* upon a casual examination, may appear to support counsel's claim and if the debt of the claimant had been created by the husband prior to the enactment of the law of 1816, it would have been exactly in point. However, the debt in the present case certainly was not created or contracted prior to the year 1816. As I understand the *Brinckloe Case,* the Chancellor's decision was based on the construction he placed on the proviso attached to the act of 1816 and passed at the same time. The language of the proviso as originally passed (5 *Del. Laws, p.* 174) is:

"Provided always that nothing herein contained shall be construed or taken to affect or destroy any lien or incumbrances existing before the passage of this act,"

—and appearing in the present *Code* (1915, § 3304) as:

"The foregoing section shall not be taken, or construed, to affect, or destroy any lien, or incumbrance, existing prior to the passage of an act of the General Assembly of this State, entitled 'An act respecting devises of lands, joint estates and dower,' passed at Dover, February 16, 1816."

The case decided that as the law existed prior to the passage of the *Act of* 1816, all debts, whether reduced to judgment or not, and whether created or contracted before or after marriage, "were charged upon land and made liens or incumbrances so as to exclude the widow's dower, although not such as to bind or charge the land when bona fide sold by the owner in his lifetime" and when the Legislature in the *Proviso* excepted liens or incumbrances existing at the time the act was passed, then accord-

ing to the construction by the Chancellor of the words "liens and incumbrances" all existing burdens, liens and incumbrances such as before the act prevented a widow from recovering her dower were excepted from the general provisions of the act. In other words, the Chancellor held the debt in that case to be a charge upon the land at the time the act was passed and therefore it was an existing lien or incumbrance within the meaning of the proviso and for that reason excepted from the general provisions of the law. The Chancellor's decision was not predicated alone upon the fact that the debt was created or contracted before marriage and I believe that his finding necessarily would have been the same if the debt then under consideration had been created or contracted after the marriage and prior to the passage of the act of 1816. The court in the main case (*Griffin v. Reece*) remarked that the *Brinckloe Case* had been decided on very refined, if not questionable, grounds and proceeded to distinguish the case then under consideration from the present case.

It is my opinion that the terms of the proviso do not determine the present case as the proviso only applied to those liens and incumbrances (and under the decision of the *Brinckloe Case* "debts") which existed at the time the original act was passed in 1816. Certainly the debt of this claimant was not in existence at that time.

For the reasons stated, the rule is dismissed and the costs are hereby taxed against the petitioner.