WILMINGTON TRUST COMPANY, a corporation of the State of Delaware, EXECUTOR OF THE LAST WILL and TESTAMENT OF ALICE DUPONT ORTIZ, Deceased,

*vs.*

MARGUERITE ORTIZ BODEN, ALEXIA ORTIZ DEBIE and JULIEN ORTIZ.

*New Castle, June 28, 1944.*

*Charles F. Richards,* of the firm of Richards, Layton and Finger, for complainant.

*Arthur G. Logan,* of the firm of Logan and Duffy, for Marguerite Ortiz Boden, a respondent.

*John J. Morris,* of the firm of Hering, Morris, James and Hitchens, for Alexia Ortiz deBie and Julien Ortiz, respondents.

PEARSON, Vice-Chancellor: The questions are (1) whether the "estate by curtesy" of the husband of the testatrix is an interest for his life in one-half or in all of the real estate which the testatrix owned at the time of her death; and (2) whether the "estate by curtesy" is superior to the rights of the testatrix' creditors.

The testatrix devised two tracts of land, one to each daughter. Each devise is in fee simple with the following limitation: "subject, however, to whatever estate by curtesy my husband, Julien Ortiz, shall have in and to said real estate." The executor asserts that doubt exists as to what is the husband's "estate by curtesy". The testatrix died insolvent. Her lands comprise a substantial part of her estate. The executor says that "It will be necessary * * * to sell the real estate in order to pay the claims"; and that "until it is determined what interest, if any, * * * the husband of the testatrix is entitled to * * * as the 'estate by curtesy', it will be difficult, if not impossible, to sell the said real estate and * * * to correctly value the said real estate for the purpose of computing the Federal Estate and Dela-

ware Inheritance Taxes." The executor prays that this court determine the questions stated above. Conceiving that its duty is to represent the creditors of the estate, it takes a position favorable to them, with respect to both questions. This is opposed by the husband and one of the daughters, Mrs. deBie. The other daughter, Mrs. Boden, has answered the bill without indicating her position as to these questions.

It is convenient to approach the subject of tenancy by the curtesy by considering curtesy rights in intestate real estate, and testate real estate, separately. As to the former, the Delaware law governing the rights of a surviving husband seems clear. The most recent statute regulating the descent of intestate lands was enacted in 1923, and reads, in part, thus[1]:

> "The descent of intestate real estate, in all cases, shall be subject to the rights of the surviving husband or widow; that is to say, if the intestate leave a husband and issue, such husband shall have one-half part of the real estate aforesaid for the term of his life, and if the intestate leave a husband and no issue such husband shall have all of the real estate aforesaid, for the term of his life, as tenant by the curtesy; * * *."

As to testate real estate, a statute relating to Married Women, adopted in 1919 and presently effective (30 *Laws of Del., Chap.* 197, *pp.* 525, 526, *Rev. Code* 1935, § 3541), empowers a married woman to do various acts, including the making of a will, with the following qualification: "provided that nothing in this section contained shall be deemed to affect the right of the husband, if he survive his wife, as tenant by the curtesy in the real estate of his wife." Thus,

---

[1] 33 *Laws of Del., Chap.* 212, *pp.* 616, 617, *Rev. Code of Del.* 1935, § 3731. This statute also provides in its final paragraph:

"If the intestate leave a husband or widow, and if there be no kin, or heir of the intestate, to the husband or widow in fee simple."

This is not referred to as "curtesy", in contrast with the provisions quoted above, and none of the parties has contended that it falls within that classification.

the statutory authority of a wife to devise her lands is qualified by an express reservation of "the right of the husband * * * as tenant by the curtesy." The meaning of this language, as applied to testate lands, is a critical point in dispute. It is not defined in the Married Women's Act; nor does any other statute expressly define a husband's curtesy interest in testate lands of his wife. The executor says that it means, with reference to testate lands, the estate first described in the above quotation from the 1923 Intestacy Statute; that is, the right to one-half part of a wife's real estate, for the life of the husband, where the wife leaves a husband and issue surviving. Mr. Ortiz says that it means, with reference to testate lands, the common law right of a tenant by the curtesy consummate.

Tenancy by the curtesy consummate in this state was originally a common law right. *Evans v. Lobdale*, 6 *Houst.* 212, 22 *Am. St. Rep.* 358; *In re Skinner's Estate*, 24 *Del. Ch.* 420, 6 *A.* 2d 728. This interest was an estate for the life of a surviving husband in all of the lands of his wife, and arose upon the death of the wife if there had been a child of the marriage born alive. *Evans v. Lobdale, supra.* In 1827, a statute was enacted concerning real estate of intestates, (7 *Laws of Del., Chap.* 38, *p.* 77) which was a forerunner of the 1923 Intestacy Statute mentioned above. After prescribing rules of descent, it provides:

"Subject, however, in all the cases aforesaid, to the rights of the surviving husband or widow, when there shall be such, as follows; that is to say;

"If the intestate leave a husband, who shall have had by said intestate during their marriage issue born alive, whether such issue have lived or died, such husband shall hold all such lands, tenements or hereditaments for the term of his life, as tenant by the curtesy."

The parties assert that the rights of a surviving husband described in the statute are the same as those which constitute the common law tenancy by the curtesy consummate. The parties are at odds as to whether, after the pass-

age of the 1827 act, a husband's rights in lands of his deceased wife (there having been issue born alive) had their source in the common law, as previously, or in the statute. The executor argues that the common law rights of tenancy by the curtesy consummate no longer existed after the adoption of the statute, but that the act created statutory rights superseding and replacing them. The executor contends that it would be incongruous for a common law estate and a statutory estate, each comprising the same rights, to exist simultaneously. As to the fact that the statute purports to treat of intestate real estate, the executor points out that when it was enacted in 1827, a married woman could not make a valid will; and that consequently, any real estate belonging to a married woman dying at that time was intestate real estate, and that common law curtesy consummate was itself an interest in real estate of an intestate.

The disability to make a will was removed by the first Married Women's Acts of 1873 and 1875, which were forerunners of the 1919 act previously mentioned. The act of 1873 (14 *Laws of Del., Chap.* 550, *pp.* 638-640) provides, in part, as follows:

"That any married woman * * * may, with the written consent of her husband, * * * dispose of her property, both real and personal, by will; but such disposal shall not effect the rights of the husband as tenant by the curtesy; * * *."

By amendment in 1875, 15 *Laws of Del., Chap.* 165, *pp.* 289, 290, the requirement of a husband's consent was eliminated. The Court of Errors and Appeals in *Evans v. Lobdale, supra,* said of this act:

"It was designed to abolish both his [a husband's] freehold, *jure uxoris,* and the tenancy by the curtesy initiate, leaving him only the tenancy by the curtesy consummate in the event of his surviving his wife, and having had issue by her during the marriage."

Without narrating intervening amendments, suffice it to say that since the original act of 1873, the statutory authorization of married women to make a will has at all

times been subject to an express reservation of the right of a surviving husband "as tenant by the curtesy" in the real estate of his wife. Furthermore, from 1827 to 1923, the effective Intestacy Statutes have described the rights of a surviving husband in the lands of his intestate wife; and as to certain of these rights have stated that the husband shall be entitled "as tenant by the curtesy"; and the rights so characterized were, during the period mentioned, rights which were components of common law tenancy by the curtesy consummate. In 1923, for the first time, the Intestacy Statute characterized rights which were not components of common law curtesy, by the expression "as tenant by the curtesy."

To reiterate, when the power to make a will was first granted to married women, the reserved rights of a husband in her testate real estate was designated as an estate which had theretofore related solely to intestate lands. The executor contends that the reservation, in the 1873 Married Women's Act, of "the rights of the husband * * * as tenant by the curtesy" had reference to the statutory rights described in the 1827 Intestacy Statute (which had not then been amended in substance); and that the 1873 act could not have referred to a husband's common law right as tenant by the curtesy consummate because there has been no such common law right since the enactment of the 1827 statute. Likewise, that the present Married Women's Act (1919) reserves rights presently described in the Intestacy Statute (1923) and characterized by the expression "as tenant by the curtesy." Unless the statute be so construed, says the executor, there would result "a most absurd and bizarre situation." Thus, if Mrs. Ortiz had died intestate with respect to her real estate, it is plain that under the statute her husband would have been entitled only to a life interest in a one-half part, since issue survived; and it would be anomalous if, merely because she attempted to devise the lands, her husband should become entitled to an interest in

more than if she had died intestate. Such a construction, the executor argues, would materially diminish a married woman's right to dispose of her real estate by will.

The executor's argument seems highly persuasive, but for the fact that it is not supported by Delaware authorities. In *Evans v. Lobdale, supra,* two opinions were rendered. Each discussed the rights of a husband in the real estate of his wife at common law. Each indicates that the court considered that the common law rights were operative up to the passage of the first Married Women's Acts. Compare *In re Andrews' Estate,* 3 *Terry* (42 *Del.*) 376, 34 *A.* 2d 700, 702. Neither mentioned the Intestacy Statute of 1827 (or any amendments of it) as abolishing the common law tenancy by the curtesy consummate, or as constituting the source of a husband's right as tenant by the curtesy. In the case of *In re Skinner's Estate, supra,* a surviving husband asserted an interest as tenant by the curtesy in all of the lands of his wife, she having devised the lands to persons other than the husband, and there having been no issue born of the marriage. He contended that the 1923 Act provided a new form of curtesy. The Orphans' Court declined to recognize the claim of the husband, holding that the 1923 Act deals exclusively with intestate real estate, and does not create a new right for the benefit of a surviving husband. As we have seen, that Act uses the expression "as tenant by the curtesy" to modify or describe each of two alternative interests of a surviving husband in intestate lands of his wife; (1) an interest in one-half of the lands, if the wife, leave issue; and (2) an interest in all of the lands, if she leave no issue. In the *Skinner* case, the husband asserted the second interest as his estate by the curtesy in testate lands; here, the executor asserts that Mr. Ortiz' estate by the curtesy is the first interest. If the 1923 Intestacy Act does not define the curtesy interest in a wife's testate property when no issue survive, surely it cannot do so when issue survive. The applicability of the *Skinner* case is apparent. Its rule

and reasoning will be followed here as a basis for the constructional conclusion that a husband's curtesy estate in his wife's testate property is the common law estate of tenancy by the curtesy consummate. Hence, Mr. Ortiz' "estate by curtesy" is a life interest in all of the lands of the testatrix.

Coming now to the second question, it is generally recognized that a husband's common law estate as tenant by the curtesy consummate is superior to claims against his wife (which are not prior encumbrances) ; and that this rule is unaffected by a married women's act which, although it abolishes or limits curtesy initiate, does not operate to abrogate curtesy consummate. *Hampton v. Cook,* 64 *Ark.* 353, 42 *S. W.* 535, 62 *Am. St. Rep.* 194; *Gilkison v. Gore,* 79 *W. Va.* 549, 91 *S. E.* 395; *Myers v. Hansbrough,* 202 *Mo.* 495, 100 *S. W.* 1137; *Brownie v. Bockover,* 84 *Va.* 424, 4 *S. E.* 745; 15 *Am. Jur., p.* 288; 2 *Thompson on Real Property, (Perm. Ed.)* § 864. Some of the authorities state as a reason for the rule, that a husband's interest is not acquired by descent, but as an incident of the marriage relationship.

In contending that a husband's curtesy estate is subordinate to the claims of his wife's creditors, the executor urges the public policy that, generally speaking, a debtor's property should be subject to sale to satisfy his debts; that the statute creating dower (*Rev. Code,* § 3767) provides that a widow's interest shall be free from debts of her husband, whereas there is no statute giving priority to curtesy; and that *Chapter* 99 of the *Code,* dealing with the sale of a decedent's lands to pay debts, makes provision for the protection of a widow's dower, but not of a husband's curtesy estate. Opposed to the policy mentioned is a policy indicated by the cited authorities that a husband's curtesy should be free from claims of his wife's creditors (not prior encumbrances). Before the removal of the common law disabilities to contract and to be sued, there was little likelihood that this rule would be questioned. Our present Married Women's Act which empowers a married woman to

contract and to be sued (see *Rev. Code,* § 3541), contains the qualifying provision previously discussed in connection with the power to make a will: "provided that nothing in this section contained shall be deemed to affect the right of the husband, if he survive his wife, as tenant by the curtesy in the real estate of his wife." This statute seems not only consistent with, but of itself lends strong support to, the rule exempting curtesy from the claims of a wife's creditors. The difference in the history of the estates comprised by dower and curtesy in Delaware suggests a possible explanation for an express statutory exemption in the case of dower, and not in the case of curtesy. For a considerable period prior to 1816, a widow's dower interest was subject to the claims of her husband's creditors. *In re Estate of Eugenio Lamonica,* 16 *Del. Ch.* 458, 141, *A.* 315; *Bush v. Bush,* 5 *Houst.* 245. By statute in 1816 (5 *Laws of Del., Chap.* 95, *p.* 174), dower was made paramount to debts of a husband. In contrast, there is no indication that curtesy was ever subject to a wife's debts in Delaware. The provisions of our statutes and the history of curtesy in Delaware refute the argument and make inapposite the cases cited by the executor for the subordination of curtesy to a wife's debts.

The executor should be instructed that Mr. Ortiz' "estate by curtesy" in all of the testatrix' lands is superior to the claims of her creditors, which are not prior encumbrances.

A decree accordingly will be advised.