## Enslen, Jr.'s, Administrator, et al. v. Enslen, et al.

(Decided January 11, 1918.)

### Appeal from Campbell Circuit Court.

1. Executors and Administrators—Purchase by Executor—Validity.— Testator provided in his will that his executors should be the final judges of the method by which his estate should be divided, with

the exception that his son, Peter, should have the right to select a certain piece of property. Prior to his death the testator leased this and other property to a corporation owned by his four sons, and gave the corporation the right to purchase the leased property at certain prices during the continuance of the lease. At the same time he added a codicil to his will to the effect that the option to his son, Peter, should be subject to the lease and option to purchase which he had executed to the corporation. Some time after the testator's death and while the lease was in force, the corporation exercised the option. Thereupon the testator's executors, who were his two sons, Frederick and Charles, conveyed the property to the corporation pursuant to the option contract, and the corporation then conveyed the property which his son, Peter, subject to that option, had the right to select, to Frederick, one of the executors. Held, that inasmuch as Frederick, as executor, had no discretion in the matter, but was under the legal duty to convey the property to the corporation upon the exercise of the option, his trusteeship then ended and there being no conflict between his official duty and his personal interest, the rule that an executor can not purchase either directly or indirectly from himself or at his own sale, did not apply so as to prevent Frederick, one of the executors, from acquiring title from the corporation.

2.  Corporations—Options—Exercise of Option and Dissolution—Right of Corporation.—Under the above circumstances, the corporation had the undoubted legal right to exercise the option and to dispose of the optioned property as it saw fit, and the fact that the stockholders provided for a dissolution of the corporation and the distribution of its assets at the same time they determined to exercise the option, is wholly immaterial.

3.  Corporations—Options—Exercise of Option by Corporation—Motive.—Where the stockholders of a corporation have the undoubted legal right to exercise an option for the purchase of certain real estate, the courts will stop their inquiry at that point, and not make the action of the stockholders in exercising the option and taking the property, turn on the motive which actuated them.

C. T. BAKER for appellants.

FRANK V. BENTON and L. S. SHEPLER for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Peter Ensler, Sr., was a butcher in the city of Newport. For about twenty years the business was conducted with the assistance of his four sons, Peter, Jr., Charles, Frederick and Edward. In the year 1912, Peter Enslen, Sr., retired and sold and transferred his business to the

Enslen Bros. Company, a corporation organized and owned by his sons.

Peter Enslen, Sr., died testate in the month of December, 1915, leaving four daughters and his four above named sons. By his will which was dated May 26, 1910, his wife, Victoria, and son, Frederick, were appointed and qualified as executors. Subsequently his wife was removed and his son, Charles, appointed executor in her stead. His will contained the following provision:

"The executors shall be the absolute and final judges of the method of division and the quantities of the portions, save that should my son, Peter, desire to take the same, in computing his part, the lot and building thereon at the northwest corner of Eighth and Robert streets, Newport, Ky. (and the entire equipment for the butcher business therein contained, excluding horses, vehicles and harness), shall be valued at $7,500.00 and incorporated in his portion upon that valuation."

On October 18, 1912, the day that he sold and transferred his business to Enslen Brothers Company, he executed to that company a lease for five years with the privilege of renewal for a like period, on certain pieces of real estate, including that optioned to his son by the foregoing provision of his will, and included in the contract an option to purchase the leased property, which option is as follows:

"It is further agreed and understood as part of the consideration moving the parties to enter into this contract that the lessee shall have the option during the continuance of this lease or its renewal to purchase the property herein demised, the first described piece in Finchtown for the sum of five thousand dollars, the second described piece on West Eleventh street for five thousand five hundred dollars, the third described piece at Eighth and Robert streets for seven thousand five hundred dollars, the said option to purchase being exercisable upon any or all of said property at the will of the lessee; and upon payment of the purchase money in cash or upon such terms as the lessee shall accept he will make proper deed or deeds therefor. The rent for the aforesaid pieces of property is estimated as thirty dollars for the first described and thirty-five for each the second and the third described and in case of a purchase by the lessees of less than all the property the rent is to be abated for the property purchased, upon the basis aforesaid."

On the same day that the lease and option contract was executed, he added a codicil to his will containing the following provision:

"Item number six of my will is altered by eliminating therefrom the words, 'and the entire equipment for the butcher business therein contained (excluding horses, vehicles and harness),' as I have disposed of these articles to my sons and I think the real estate mentioned is worth the sum named exclusive of the articles eliminated; and the item is further to be modified as follows: the option to my son Peter shall be subject to the lease and option to purchase which I have executed upon the property at Eighth and Robert streets should they be in force at my death."

Thereafter the Enslen Brothers Company continued to operate the business and the lease and option contract was in force when Peter Enslen, Sr., died in the month of December, 1915.

Peter Enslen, Jr., son of Peter Enslen, Sr., died intestate on February 20, 1916, leaving a widow and two children. His widow qualified as administratrix in the month of May, 1916.

Thereupon she sold her husband's stock in the Enslen Brothers Company, to the remaining stockholders, the stock belonging to Charles Enslen being in the name of his wife, Bertha.

On September 13, 1916, Bertha Enslen, Edward Enslen, and Frederick Enslen, the only stockholders in the Enslen Brothers Company entered into the following agreement:

"CONSENT OF STOCKHOLDERS TO DISSOLUTION OF THE ENSLEN BROTHERS COMPANY, A CORPORATION,

"This agreement witnesseth:

"That Fred Enslen, Edward Enslen and Bertha Enslen, each being the owner of one-third of the capital stock of the Enslen Brothers Company, a corporation organized under chapter 32, Kentucky Statutes, by filing articles of incorporation in the office of the county clerk of Campbell, Kentucky, and in the office of the Secretary of State, being desirous of terminating the affairs of said company, hereby consent and agree to settle up its affairs and business as speedily as possible, as follows:

"1.   The option to purchase from the estate of Peter Enslen, Sr., deceased, the real estate at the northwest

corner of Eighth and Robert Streets, Newport, Kentucky, at the price of seven thousand five hundred ($7,500.00) dollars, and the real estate at No. 311 West Eleventh Street, Newport, Kentucky, at the price of $5,500.00, now held by the said company under lease bearing date of October 18, 1912, is to be exercised on September 18, 1916, and the company is to, on the same day, convey the property at the northwest corner of Eighth and Robert Streets to Fred Enslen upon the payment of the purchase price of $7,500.00, which Fred Enslen agrees to pay, and the property at 311 West Eleventh Street to Bertha Enslen, or her assigns, upon the payment of the purchase price of $5,500.00, which Bertha Enslen agrees to pay; said conveyances to be by deeds of general warranty, free of all incumbrances.

"2. Fred Enslen agrees to purchase for cash on September 18, 1916, all the store and stable equipment used in connection with the company's business at Eighth and Robert Streets at the valuation shown by inventory of date, September 1, 1916, and all stock on hand in said store at the wholesale market price.

"3. Bertha Enslen agrees to purchase for cash on September 18, 1916, all the store and stable equipment used in connection with the company's business at 331 West Eleventh Street, at the valuation shown by inventory of date, September 1, 1916, and all stock on hand in said store at the wholesale market price.

"4. The slaughter house equipment, office equipment and the slaughter house stable equipment and all property of the company are to be sold and reduced to cash and all accounts receivable collected as soon as possible.

"5. All of the debts of the company are to be promptly paid and the balance on hand is to be promptly divided in equal shares among Fred Enslen, Edward Enslen, and Bertha Enslen.

"In witness whereof, the parties have hereunto signed their names this 13th day of September, 1916."

On September 18, 1916, Frederick Enslen and Edward Enslen, as executors of Peter Enslen, Sr., conveyed the property at the corner of Eighth and Robert streets to the Enslen Brothers Company, and thereupon the Enslen Brothers Company conveyed the same property to Frederick Enslen.

This suit was brought by Mary Enslen, administratrix of Peter Enslen, Jr., deceased, Marcella Enslen, an

infant 16 years of age, by Mary Enslen, statutory guardian of Marcella Enslen, and Mary Enslen, widow of Peter Enslen, Jr., and Marie Carnan, against Frederick Enslen and Catherine Enslen, his wife, and Frederick Enslen, and Edward Enslen, executors of Peter Enslen, Sr., to set aside the conveyances from the executors of Peter Enslen, Sr., to the Enslen Brothers Company, and from the Enslen Brothers Company, to Frederick Enslen, and to require said executors to convey said real estate to plaintiffs at the price of $7,500.00. Proof was taken and on final hearing the petition was dismissed. Plaintiffs appeal.

The conveyances are attacked on the ground that Frederick Enslen, being executor of his father's will, could not purchase the property in question from himself as executor, and that the exercise of the option was not in good faith and for the benefit of the corporation, but was a mere sham to enable Frederick Enslen to obtain title, and was the result of a fraudulent conspiracy between the executors and stockholders to prevent the estate of Peter Enslen, Jr., from acquiring the property.

In our opinion, the rule that an executor can not purchase, either directly or indirectly, from himself or at his own sale, has no application to the facts of this case. Here Peter Enslen, Sr., the testator, knowing that his son, Frederick, was one of the stockholders in the Enslen Brothers Company, gave to that company the right to purchase the property at Eighth and Robert Streets, at any time during the continuance of the lease, or any renewal thereof. By the codicil he made the right of Peter Enslen, Jr., to take the same property in the distribution of the estate, contingent on the company's exercising that option. Frederick Enslen, as executor, had no discretion in the matter. The price and other terms of the lease and option contract were fixed by the testator himself. When the company elected to exercise the option, it was not within the power of Frederick, as executor, to refuse to make the conveyance. Had he refused, the company could have sued and enforced specific performance. When the conveyance to the company was made pursuant to the contract executed by the testator, Frederick Enslen's relations thereto as executor were ended, and the absolute title to the property vested in the corporation with the consequent right to dispose of it to whomever it saw fit. Under these circumstances Frederick Enslen's trus-

teeship ended, and his relations to the property being the same as those of an entire stranger, there was no conflict between his official duty and personal interest, and therefore nothing to prevent him from acquiring the property. Allen v. Gillette, 127 U. S. 589.

But the point is made that inasmuch as the stockholders of the Enslen Brothers Company, provided for the dissolution of the corporation at the same time that it was determined to exercise the option, and further provided that on the same day the option was consummated, the property in question should be conveyed to Frederick, it is evident that the option was not exercised in good faith and for the benefit of the corporation as intended by the testator, but solely for the purpose of preventing the estate of Peter Enslen, Jr., from taking the property under the will. It must be remembered, however, that Peter Enslen, Jr.'s right to the property was subject to the option of the company. There is nothing in the will or lease and option contract, from which it could be inferred that the option was conditional on the company's continuing in business. On the contrary the contract gave an unqualified right of purchase, and this privilege could be exercised whether the company deemed it best to continue or discontinue the business. The apparent difficulty with the case grows out of the fact that the instrument by which the option was exercised, also provided for the dissolution of the corporation and the conveyance of the property in question to the corporation, and its immediate transfer to Frederick Enslen. Manifestly if the stockholders had first exercised the option and then provided for the subsequent conveyances on a different occasion and by a different resolution, no question could arise as to the validity of their action. That being true, it is wholly immaterial that they acted on both matters at the same time and by the same instrument. Since the stockholders had the undoubted legal right to accept the option and take the property as well as to dissolve the corporation and distribute its assets as they saw fit, the courts will stop their inquiry at this point and not make the validity of such action turn on the motive which actuated them.

Judgment affirmed.